**J. R. GODFREY, Appellant,**

v.

**Joseph H. HENDERSON, Deputy Commissioner, Seventh Compensation District, Federal Security Agency, Bureau of Employees Compensation, Appellee.**

No. 15373.

United States Court of Appeals
Fifth Circuit.

May 25, 1955.

Hutcheson, Chief Judge, dissented.

Vincent F. Kilborn, W. Jack Edwards, Mobile, Ala., for appellant.

Charles B. Arendall, Jr., Paul W. Brock, Mobile, Ala., amici curiae.

Percy C. Fountain, Asst. U. S. Atty., Smith, Hand, Arendall & Bedsole, Thomas M. Haas, Asst. U. S. Atty., Mobile, Ala., Stuart Rothman, Solicitor of Labor, Ward E. Boote, Asst. Solicitor, Herbert P. Miller, Attorney, U. S. Department of Labor, Washington, D. C., of counsel, for appellee.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

In 1950 appellant was severely injured in the course of his employment as a dock worker at Mobile, Alabama. On May 24, 1951, the Commissioner made an award finding him temporarily totally disabled. On July 9, 1953, the employer filed application for review pursuant to Section 22 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., based upon the contention that there had been a change in the condition of the claimant. After a hearing, the Deputy Commissioner found that there had been such a change in appellant's condition and that his disability

was permanent partial, consisting of loss by amputation of his right leg, 25 per cent loss of use of his left foot and 60 per cent loss of use of his left arm but that he was not totally disabled. This finding was based upon the testimony of two doctors who thought appellant would be able to do limited work if he were fitted with an artificial leg. Appellant petitioned the district court to review the Commissioner's findings and require reinstatement of total temporary or a finding of total permanent disability. The trial court upheld the Commissioner's findings and dismissed the petition.

In this appeal, appellant argues the evidence shows by the doctors' examinations that his condition is the same as originally and that he is unable to do any work at the present time. He contends that the Commissioner's finding is based purely upon speculation that he might be able to do some limited work at some time in the future, if he acquires an artificial limb and if he learns how to use it properly and if he is able to obtain employment. Commissioner argues that his finding is final if there is evidence in the record to substantiate it and points to the testimony of the two doctors as indicating appellant's condition had changed from temporary to permanent and his disability is only partial.

Appellant does not dispute the percentages thus found, but contends these are not the only criteria to be considered in determining whether he is totally disabled. He denies there has been any change in his disability status, but if so, the facts show that he is now permanently and totally disabled. The Commissioner determined that his total disability ended as of November 8, 1953, leaving "permanent partial" (scheduled) disabilities in the percentages above stated. The monetary value of the injuries was computed according to the statute, resulting in a decree of $11,000 to be paid by December 26, 1956.

The court below wrote no opinion but found as follows:

"The findings of fact made by Joseph H. Henderson, Deputy Commissioner, as set out in said new compensation order and modification of award dated December 14, 1953, and as filed in this cause, are supported by substantial evidence on the record considered as a whole, and are hereby adopted by this Court and made a part hereof as fully and as completely, and with the same effect, as if set out herein."

and that:

"Said new compensation order and modification award dated December 14, 1953, was entered in conformity with the law."

It cited O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483, and South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

The percentages of impairment were stipulated. Appellant testified that he was born March 9, 1891, and hence was 62 years old at the time of the Commissioner's ruling; that he completed the fourth grade in school, and except for longshore work, his adult life had been spent as a seaman; that for twenty-five years he had been employed by Alabama Dry Dock Company, his employer at the time of his injury (which carried its own insurance); that he cannot undress himself, and demonstrated at the trial the difficulties he experiences in dressing; that although he has tried, he has been unable to do any work since his injury, because he cannot stand; that "something on his left heel" causes him "considerable trouble" and now and then the doctor has to cut it and pus flows therefrom; that the doctor advised him to stay off his feet as much as possible; that the left foot is still painful and callous has developed thereon. He further stated that his left arm had to be operated on and that there is a "little lump that comes up there and it feels like something hitting down there all the time * * *" and the condition has been "growing worse"; that the stump of his right leg is still sore and tender but otherwise gives him no trouble; that the trouble with the left

leg is confined to the foot; that the left foot has no bone for the flesh to stick onto; that he has been to three or four employment bureaus but was unable to obtain employment; that he doesn't rest well at night and his wife helps him to and from the toilet since he cannot take down his pants without someone holding him up. In the course of his testimony the Commissioner commented that it was obvious that Godfrey was greatly handicapped, since his locomotion was made possible only with crutches, but that if he had an artificial limb he might do better.

Appellant offered no medical evidence, but stated he would "adopt" that presented by the employer.

For the employer, Dr. W. C. Hannon testified that he was an orthopedic specialist of some 28 years experience; that he had examined appellant and reported to the employer in the form of a letter, which was offered in evidence, in which he expressed the professional opinion that the condition was "permanently fixed and stationary"; that there was no evidence of neurosis, and that the left heel was not likely to become ulcerated; that while he has considerable impairment of the left hand, he has some useful function of the fingers and thumb; that the condition of the left foot and ankle was permanent; that the stump of the right leg is suitable for the fitting of a "prosthetic appliance", or artificial leg, and that this was supported by the X-Ray; that appellant could get along very well with an artificial leg which will relieve pressure on the left foot; that he saw no reason for a "flare up" in the left foot and ankle, although a fracture of the lower bone of the fibula, *which makes a portion of the ankle, is not completely healed,* but "is fixed permanently"; that there are some circulatory changes in this leg and foot due to non-use; that no further surgical or medical treatment will improve appellant's left foot, which has reached a maximum of recovery; that there is no prospect of further improvement in claimant's left hand, except for more use of it; that because of scar formation and contraction, there is ten-

derness in the left ankle; that there is nerve involvement and that the ulceration was probably caused by "bone condition" and that finally claimant can "tend to become employed" upon proper functional rehabilitation and such occupations as janitor, watchman, punching a clock, sorting parts, and "after reasonable time" he could engage in some of the "finer mechanical approaches", poultry raising or shoe repairing but that training would be necessary to do many of these things outlined.

The other doctor, Leslie Heiter, testified that he had treated claimant from the time of his injury, and had made the report June 24, 1953, in which he found the condition was "fixed", permanent and stationary; that the sore which developed on claimant's heel was due to an infection from the heel caused by rubbing of the shoe on the scar; that such development was not due to any basic medical pathology, and he has not changed his opinion as to claimant's condition; that claimant can return to work with some prosthesis (artificial limb); he could do sweeping, janitor work, and grocery store work; that with the use of an artificial limb claimant could get around with a cane; that in his present condition, *he is unable to do any work without an artificial limb*; that the stump of the right leg is at present in condition for an artificial limb; *that in his present condition claimant is totally disabled and unemployable* but that with the artificial limb his chances for employment would increase; that no further medical or surgical treatment can improve his condition; and that any improvement depends upon obtaining an artificial leg and his own efforts.

There is no dispute but that Godfrey was covered by the Longshoremen's Act.

 It is well settled that if the Commissioner's findings as to the disabilities are supported by substantial evidence where the same is conflicting, his conclusions are final and the courts have no authority to weigh the evidence. Southern Stevedoring Co., Inc., v. Henderson,

5 Cir., 175 F.2d 863; Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184.

Section 8(a) of the Act provides:

"Permanent total disability: In case of total disability adjudged to be permanent 66⅔ per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability. Loss of both hands, or both arms, or both feet, or both legs or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. *In all other cases permanent total disability shall be determined in accordance with the facts.*" (Emphasis supplied.)

█ The Act, in Section 2 (definitions —paragraph 10) provides:

" 'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

In a letter report of examination of the claimant by Dr. Hannon, dated November 14, 1953, he stated substantially the same condition as summarized above and it seems clear that appellant, as a result of his accident, had his right leg amputated above the knee, his left foot is practically useless at the present time, and according to the medical experience, the use of his left arm has been reduced by 60 per cent. In view of his age, now approximately 64, and education, fourth grade, it appears highly speculative to say that any prospective employer would be willing to give him work and take the risk of his receiving another injury. He knows little or nothing about anything except work as a seaman. As stated earlier, the facts are not disputed and it becomes a question of law as to whether his disability was total when the matter was heard by the Commissioner, whose ruling was affirmed by the court below.

In Eastern S. S. Lines, Inc., v. Monahan, 1 Cir., 110 F.2d 840, 841, the facts were stated by the court as follows:

"Foley was injured in the course of his employment on March 12, 1932. The injury was to his heel, and was a severe one, necessitating continuous treatment from the date of his injury up to the date of the order. Foley made several attempts to resume working for his former employer in lighter jobs than he had previously been accustomed to do, but, in each case, had to quit. The last time that he worked, in June of 1936, his physician ordered him to stop working. He has not worked since, although he made at least one more effort to obtain light work from his former employer. In this, he was not successful.

"The Deputy Commissioner on July 30, 1938, found that the man had been temporarily and totally disabled during certain periods set out in his findings, and that he had been totally disabled since June 12, 1936, and that such disability was continuing. He also found that 'the claimant is able to perform light work, such as that of a watchman, or running an escalator, or other forms of light work which would not cause any pressure on the injured heel'."

The condition of the claimant in the present case seems to us to be worse than Foley's, the only difference being that the Commissioner in the latter found total permanent disability, while here, on the undisputed facts, partial disability only was the decision; and although the latter finding was upheld by the court below, to say that simply because the Commissioner so found on these undisputed facts that the disability was not total, we are bound thereby, would in effect commit the issue entirely to the uncontrolled discretion of that officer.

In Foley's case, in commenting on the possibility of the injured man finding employment, the court said:

"The contention of the appellant is that this finding cannot be sustained by the evidence, and is incon-

sistent with the further finding of ability to do certain light work. There is no actual inconsistency between a man being totally disabled for the purposes of the Longshoremen's and Harbor Workers' Compensation Act, and possessing a present ability to do work of a very limited nature. If there is an ability to do work of a limited nature, and that work is available in the community in which the employee resides, and can be secured by him, then a different situation will arise. To follow the line of reasoning suggested by the appellant, namely, that one who can do any type of work is not totally disabled, would preclude a great many of the cases that are known to be total disability cases from full recovery.

"Disability is defined in the act as 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment'. 33 U.S.C.A. § 902(10). Total disability would seem to exist when there is a complete incapacity to earn wages in the same or any other employment. The use of the words 'in the same or any other employment' presupposes a situation where a man can secure employment. This same construction has been given to the Massachusetts Workmen's Compensation Act in Lacione's Case, 227 Mass. 269, at page 271, 116 N.E. 485, at page 486 where the court said: 'Inability to obtain work resulting directly from his injury would be an "incapacity for work" within the meaning of the workmen's compensation act.' Later, in the same case, it refers to a total inability to perform work, or to secure work to do, as determinative of the employee's right to a total loss of wage-earning ability. *The degree of disability in any case cannot be measured by physical condition alone, but there must be taken into consideration the injured man's age, his industrial history, his mentality, his education, and the availability of that type of work which he can do."* (Emphasis supplied.)

It is our conclusion that Godfrey, at the time of the hearing before the Commissioner, was, according to a fair interpretation of the undisputed facts, still totally disabled and the Commissioner was not justified in finding otherwise. Should it develop in the future that he can obtain employment, it would then be time to revise the original order. We now hold that he is still totally disabled and the judgment below is

Reversed.

HUTCHESON, Chief Judge (dissenting).

Under the liberal provisions of Section 922, Title 33 U.S.C.A. "Modification of awards", and the equally liberal construction given to it by the courts, there is no finality to an award of the kind under review here, and the affirmance or reversal of the judgment will not and cannot finally determine the total amount of compensation to be paid to appellant. Because this is so, the question we are called upon to determine is not whether time will show that the findings and award as to plaintiff's condition represent a correct assessment not only of his condition at the time the award was made but for the future, and we may not disturb the judgment unless we are in a position to say that the evidence was insufficient to support the findings that the condition was at that time as found by the commissioner. With this in mind and also in mind that the commissioner may, indeed must, if conditions change, reconsider and again modify his award, I do not see how we can, under the controlling rule of law which the majority opinion correctly sets out, upon this record, set aside the finding and award of the commissioner.

I, therefore, respectfully dissent.