**HAUGHTON ELEVATOR COMPANY, and the Aetna Casualty and Surety Company, Employer/Carrier, Petitioners,**

v.

**Ernest A. LEWIS, Claimant, Respondent.**

**No. 76–2450.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1977.

Decided Feb. 17, 1978.

Winter, Circuit Judge, filed a specially concurring opinion.

Donald Russell, Circuit Judge, dissented with an opinion.

**448**

Ted R. Manry, III, Tampa, Fla. (MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., on brief), for petitioners.

Tim Moran, Tampa, Fla. (Webster & Caltagirone, Tampa, Fla., on brief), for respondent.

Before BRYAN, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

The Benefits Review Board of the United States Department of Labor readjusted the basis of compensation awarded Ernest A. Lewis from that of permanent partial disability in 1967, to permanent total disability in 1973. The disability arose from a single injury which was covered by the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 901 et seq., as amended.* His employer, Haughton Elevator Company, with its surety appeals. Id. 921. The thrust of their appeal is that despite the findings of present permanent total disability by the Administrative Law Judge and the Board as a matter of law, there could not be a total disability of Lewis since at the time of the change in compensation status he was employed at a "substantial" monthly wage. We affirm.

The facts as found follow. Lewis was accidentally hurt April 4, 1963 while working in an elevator installation, earning $184.80 per week; he had been so employed for more than 16 years. Upon his application he was granted weekly benefits on December 14, 1967 for permanent partial disability. 33 U.S.C. § 908(c)(21). After his misfortune, he was reemployed by Haughton, but discharged in January 1967 for refusing to load frames weighing in excess of 145 pounds each. His refusal was due to diminished strength following three herniotomies. The weekly compensation awarded Lewis in the aggregate of $24,000.00 terminated on July 17, 1973. 33 U.S.C. § 914(m).

After discharge Lewis worked during brief periods for other elevator companies as a constructor. In 1973 his continued pain was diagnosed as a return of the left-side hernia. Another operation was performed in November when fluid was observed in the right testicle. The medical advisors warned that he should forego elevator employment and obtain light work.

Finally, in 1974, he procured employment with Orkin Exterminating Company at a salary of $524.00 per month. This was the only job he found obtainable in his weakened condition, though not comparable to his lost weekly earnings of $184.80. Lewis had no other income; continuance of the Orkin employment was not assured since his strength had deteriorated, and his benefits under the Act had terminated.

It was in these straits on July 14, 1974, just less than one year after the exhaustion of the 1967 award but while still with Orkin, that Lewis sought reclassification into permanent *total* disability. If successful, this request would not have increased his prior benefits but would have restored his entitlement to them throughout the continuance of total disability. 33 U.S.C. § 908(a).

---

\* Although the injury occurred while Lewis was working for Haughton in Arlington County, Virginia, the law of the District of Columbia is made applicable because Haughton was "carrying on employment" in the District. See § 36–501, District of Columbia Code, 1967, adopting the Longshoremen's and Harbor Workers' Compensation Act, supra. The appeal is properly addressed to this court because this Circuit embraces the place of the injury. 33 U.S.C. § 921(c) as amended in 1972.

The Administrative Law Judge, with the Benefits Review Board concurring, on November 12, 1975 rated him in this more helpless category as of July 17, 1973, the date of the expiration of the permanent *partial* disability period. It is this determination of *present* total disability that is the salient of the appellants. They charge that in neither law nor fact is this decision permissible as Lewis was employed at the time. This argument must fail.

For a change in conditions a modification of a prior order is authorized by the Act, to decrease or increase an award. 33 U.S.C. § 922. Prior to the instant appraisal the ALJ and the Board reviewed the uncontested facts just sketched. This reexamination revealed to them a disability in Lewis traceable to his injury, preventing him from any longer making the wages he was receiving when injured, a disability plainly more desperate than the partial disability accorded him in 1967.

In so concluding the Board said, "His 1975 rate of earnings in full time employment as an exterminator [$524.00 each month] were only two-thirds of his weekly earnings [$184.80] at the time of his injury in 1963 when employed as an elevator mechanic". This comparison was drawn: "[C]onsidering the change in economic conditions over those twelve years, his *real* earnings in terms of purchasing power have been *more* significantly reduced". (Accent added.) Thus the impairment of earning capacity suffered in 1963 had become more defeating by 1974.

In arriving at this judgment of existing permanent total disability, the ALJ and the Board thus obeyed the instructions of the Act to make their finding "in accordance with the facts", § 908(a), and to mind that "(d)isability means incapacity because of injury to earn wages which the employee was receiving at the time of injury in the same or any other employment". § 902(10). In the light of the "facts" already noted, the near-destitute condition of . Lewis is laid bare. His "incapacity . . . to earn" was virtually complete. The Board, we think, was not unwarranted in anticipating,

and not awaiting, the actual end of his capacity—discharge by Orkin—because the Act would have barred another application "one year after the date [July 17, 1973] of the last payment of compensation", which would have been July 17, 1974. 33 U.S.C. § 908(a). The instant application was filed July 14, 1974—three days before the bar. 33 U.S.C. § 922. This determination is a finding of fact "conclusive" upon the court, for we cannot say it is not "supported by substantial evidence in the record considered as a whole". 33 U.S.C. § 921(b)(3).

Upon the facts and law outlined herein, together with the more detailed and specific findings and conclusions set forth in the decisions and orders of the Administrative Law Judge and of the Benefits Review Board, the judgment on appeal is approved.

Affirmed.

WINTER, Circuit Judge, concurring:

For the following reasons, I agree with Judge Bryan that the order of the Benefits Review Board should be affirmed:

Lewis indisputably sustained an industrial injury in 1963. He was found then to be permanently *partially* disabled and awarded benefits. The question which this case presents is whether the Board's later finding that Lewis subsequently became permanently *totally* disabled is supported by substantial evidence. An aspect of this ultimate question is the effect of the fact that at the time that the Board found him permanently totally disabled, he was working for an exterminating company. Another is the burden, if any, on his former employer to offer proof that he was capable of engaging in other substantial employment in order to defeat his claim when in fact he was actually employed as an exterminator.

I have no doubt that the proof is ample to support the finding that between 1963, when Lewis sustained the injury for which the first award of compensation was made, and 1974, when Lewis asserted that he was permanently totally disabled, Lewis had become permanently totally disabled. His original injury was a double hernia. This

was surgically repaired. Although he was not injured again, single and double hernias requiring additional surgical repairs recurred in 1964, 1965, 1966 and 1973. Lewis' work history throughout this period shows that he was not physically able to continue his occupation as an elevator constructor and mechanic, or, stated more precisely, his employer was unwilling to retain him since he could not do, and refused to do, the heavy lifting that his occupation required. Both treating and examining physicians are agreed that Lewis cannot work as an elevator constructor or elevator maintenance man, although they are of the view that Lewis can perform light work not including lifting of heavy objects, prolonged walking, climbing or standing.

Following his discharge as an elevator constructor by Haughton, the employer in this case, Lewis did obtain short-term employment with two other elevator companies, light work with computers for an electronics company, work at an amusement center, and a job with an electronics firm doing light bench work on radar equipment. In each instance, Lewis' physical condition and his recurrent hernias caused a cessation of his employment. His testimony that other potential employers refused to hire him because of his physical condition is undisputed.

This brings me to a consideration of whether the fact of Lewis' present employment defeats his claim of permanent total disability. At the outset, I am mindful that the Act[1] under which benefits are claimed is to be liberally construed in favor of injured workers, *Voris v. Eikel*, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953). More importantly, the concept of "disability" under the Act is an economic and not a medical one.

One does not have to be bedridden to be totally disabled. *Watson v. Gulf Stevedore Corp.,* 400 F.2d 649, 654 (5 Cir. 1968). It has long been recognized that an employee who is only partially disabled in the medical sense may be totally disabled in the economic sense when his age, education, work experience and the availability of *suitable* employment are considered. *American Stevedores, Inc. v. Salzano,* 538 F.2d 933, 935–36 (2 Cir. 1976); *Cunnyngham v. Donovan,* 328 F.2d 694, 697 (5 Cir. 1964); *Eastern S. S. Lines, Inc. v. Monahan,* 110 F.2d 840, 842 (1 Cir. 1940); *Norfolk, Baltimore and Carolina Line, Inc. v. Bergenon,* 351 F.Supp. 348, 350 (D.S.C.1972).

The administrative law judge, impliedly, and the Board, explicitly, found that Lewis' present employment as an exterminator was not "suitable" and, therefore, did not preclude a finding that Lewis was, in economic terms, permanently totally disabled. There is substantial support for this finding in Lewis' undisputed testimony concerning the nature of his present work and the way in which he must perform it.[2]

As a serviceman for an exterminator, Lewis' duties involve driving a pickup truck, carrying a one-gallon can of insecticide weighing 15–20 pounds, spraying, walking, bending and stooping. He testified that he can perform these duties, but they cause him to have extreme pain and soreness. His testimony was that he continues in this employment only because he has no other means of livelihood to support himself and his family. He works at his own pace through a full workday to complete his assignments despite pain and swelling, but he stressed that he cannot engage in these activities without enduring excruciating pain.[3] When he returns to his

---

**1.** Longshoremen's and Harbor Workers' Compensation Act, 39 U.S.C. §§ 901 *et seq.,* as extended by the District of Columbia Workmen's Compensation Act, 36 D.C.Code §§ 501 *et seq.*

**2.** Both the administrative law judge and the Board found Lewis to be a credible witness and their determination in this regard is binding on us.

**3.** My dissenting brother suggests that the pain that Lewis was enduring in 1974 was no different from the pain that he endured at the time that he was found to be only partially disabled. The record, however, does not support this assertion. Before the administrative law judge, Lewis was questioned and responded as follows:

Q. One other question: We've continuously been speaking of this pain. This pain that

home at the conclusion of a day's work, he goes directly to bed where he lies flat on his back. Only over weekends when he has no duties as an exterminator does he experience a measure of relief.[4]

Both the administrative law judge and the Benefits Review Board were of the opinion that "if [Lewis] were not working at all, he would probably be found to be permanently totally disabled." I agree with the Board that "it would be unfair to penalize [Lewis] by denying him compensation for permanent total disability because he made an extraordinary effort to keep working" and that a man "having a severe physical disability as a result of an employment-related injury should not be required to continue enduring excruciating pain and subjecting himself to the possibility of further injury by performing work which is more strenuous than that type of 'light' work he is advised to do." [5]

Lewis is 52 years old. He has a seventh grade education and was employed as an elevator constructor and mechanic for approximately sixteen and one-half years. As I have shown, the Board's determination that his present employment as an exterminator is not suitable is supported by the record. It is by now well-established that, in order to defeat a claim for benefits as a result of an alleged permanent total disability, the burden is on the employer to prove the existence of a suitable job presently available to the claimant in the community in which he lives. *American Stevedores, Inc. v. Salzano,* 538 F.2d 933 (2 Cir. 1976); *Perini Corp. v. Heyde,* 306 F.Supp. 1321 (D.R.I.1969). In the instant case, Lewis' former employer, Haughton, attempted to meet its burden merely by demonstrating the fact of Lewis' present employment. It presented no evidence to show the availability of any other job which Lewis could hold, consistent with his physical limitations, his education and his work skills, in the community in which he presently lives.[6] Manifestly, when Lewis' present employment was found unsuitable, Haughton's burden was left unsatisfied. It was, therefore, entirely proper for the Benefits Review Board to sustain an award of benefits to Lewis for permanent total disability.

DONALD RUSSELL, Circuit Judge, dissenting:

I respectfully dissent.

The claimant received an award in 1967 under a decision of the Benefits Review Board based upon a finding of permanent partial disability. He did not appeal that determination and accepted the full pay-

---

you're presently experiencing, how could you compare it to this pain, say two years ago or three years ago, four years ago?

A. Well, I tell you, it's getting worse and worse all the time when I do anything. Any stooping or bending, I just—it swells and if I do much walking the pain, I have pain and swelling all the time. I don't rest good at night. About the only time I ever get any relief is when I lay flat of [sic] my back.

4. Even so, as Orkin's employee, Lewis' earnings in 1975 were only two-thirds of his earnings at the time of his injury in 1963, without adjustment for the substantial inflation which occurred between those two dates.

5. My dissenting brother also asserts that the Board dismissed the fact of Lewis' present employment with the observation that there was no assurance that he "would be able to continue [working as an exterminator] indefinitely." The Board's statement was merely a description of the conclusions of the administrative law judge. I cannot read the Board's opinion as relying upon that observation of the administrative law judge as a ground for affirming him. To me, the Board's opinion says that it affirmed the administrative law judge because the record established that Lewis was disabled, his present job was not suitable, and his former employer had not shown any other type of work in which Lewis could profitably engage within the limitations of his physical condition, his age and his employment skills, with the result that Lewis was permanently totally disabled within the meaning of 33 U.S.C. § 902(10). In any event, I am constrained to add that, in the context of this case, I do not find the observation of the administrative law judge unreasonable. Lewis' present employment could well be deemed merely a stopgap measure to continue only as long as his sorely-taxed physical endurance held out.

6. Lewis now lives in Clearwater, Florida. He moved there in January 1960 because there was no work available for him in the Washington area, where he resided at the time of his original injury, and because his son had asthma.

ment allowable under such award. It was only after payments under that award had been exhausted that the claimant raised his claim of permanent *total* disability and sought disability payments therefor. There had been no real change in his disability between 1967, when the Board found the claimant *partially* disabled, and 1974, when it found him *totally* disabled. It is true that he had had a minor repair operation, but his disability was not enhanced by such operation. He did testify that he is now subject to pain, but he also testified to pain in his 1967 hearing. It is significant that both in 1967 and at this time the medical testimony is the same: There is no objective evidence now and there was no evidence in 1967 of any cause for pain; the evidence of pain in both cases was based solely on the subjective testimony of the claimant himself. In short, there is no substantial difference in the evidence of the claimant's disability in 1967 and at the time of the hearing on his present claim. The only differences between the two situations are:

1. After collecting some $24,000, the claimant has exhausted the payments due him under the 1967 award as made him by the Board; and

2. He now has a job at which he earns $524 per month.

Those differences do not, in my opinion, justify what is in effect a reconsideration and reversal of the 1967 decision that the claimant had suffered a permanent partial disability. On the contrary, they, and particularly his present employment, are such as to confirm the propriety of the 1967 award.

Even if we look at the present claim apart from the earlier 1967 claim, I think that the determination of permanent total disability is unsupported by substantial evidence. To be totally disabled, one must be unable to engage in *any* substantial employment available in his community. *Godfrey v. Henderson* (5th Cir. 1955), 222 F.2d 845; *Eastern S. S. Lines v. Monahan* (1st Cir. 1940), 110 F.2d 840. The *Godfrey* and *Monahan* Courts had the same view of total disability:

"Disability is defined in the act as 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' 33 U.S.C.A. § 902(10). *Total disability would seem to exist when there is a complete incapacity to earn wages in the same or any other employment.*" *Monahan* at 842; *Godfrey* at 849 (emphasis supplied).

In neither of those cases was the claimant able to find even limited employment at the time of his disability hearing, although in *Monahan* there was a finding that the claimant possessed the present ability to do certain light work. Both Courts recognized that "[t]here is no actual inconsistency between a man being totally disabled for the purposes of the Longshoremen's and Harbor Workers' Compensation Act, and possessing a present ability to do work of a very limited nature." However, these Courts also recognized that, "[i]f there is an ability to do work of a limited nature, and that work is available in the community in which the employee resides, and can be secured by him, then a different situation will arise." *Monahan* at 841; *Godfrey* at 849. The clear implication to be drawn from these two decisions is that where, as in the present case, a claimant can secure employment which is within his power to perform, his claim of permanent total disability should be denied.

In affirming the finding of the Administrative Law Judge that the claimant was under a permanent total disability, the Board dismissed the fact of his employment with the observation that there was no assurance that the claimant would "be able to continue working so indefinitely." This is true in every case; there is never an assurance that even the healthiest employee, much less one with any disability, will be able "to continue working indefinitely." This reasoning, if accepted, could be a fulcrum to turn any partial disability into a permanent disability. There is no basis in law for grounding a disability determination upon such mere speculation regarding claimant's future outlook. *Godfrey* at 849;

*Watson v. Gulf Stevedore Corp.* (5th Cir. 1968), 400 F.2d 649, 655. Thus, in the present case, the fact that claimant's employment situation *may* change at some undefined point in the future should not be relevant to a determination of his present disability status.

The majority suggests that we should disregard claimant's employment since he testified that he worked at some discomfort and despite pain. This, however, is no different from his condition in 1967 and in my opinion could not justify a reversal of the 1967 decision. In addition, the claimant has cited no case, and I have found none, wherein a claimant engaged in substantial employment has been found to be totally disabled.

Accordingly, I would reverse the decision of the Board and remand for entry of an order for judgment in favor of the employer-appellant.