**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3922

_____

Meehan Seaway Service Company,   *
Employer, and Frank Gates/Acclaim,   *
                                       *
           Petitioners,        *
                                       *
    v.                             *
                                       *
Director, Office of Workers'      *    Review of Order of Benefits
Compensation Programs, United   *    Review Board
States Department of Labor,     *
American Grain Trimmers, Inc.,   *
and Robert Hizinski,         *
                                       *
           Respondents.        *

_____

Submitted: June 9, 1997
Filed: September 15, 1997

_____

Before LOKEN and ROSS, Circuit Judges, and FENNER,[1] District Judge.

_____

FENNER, District Judge.

Meehan Seaway Service Company (Meehan) petitions for review of an order of the Benefits Review Board (BRB) of the Department of Labor awarding benefits to Robert Hizinski on his claim arising under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.*

Hizinski worked as a longshoreman in Duluth, Minnesota until October 14, 1989. On that date, Hizinski was employed by Meehan. His job on October 14, 1989, was to carry 110 pound grain sacks

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

across the uneven surface of other sacks as a vessel was being loaded. At the end of his work day, Hizinski told his supervisor that his right knee was giving him pain. Hizinski underwent knee surgery three months later and has not worked since that time.

Hizinski sought benefits for his injured right knee under the LHWCA pursuant to his amended claim which was filed on May 9, 1990. Hizinski alleged two injuries to his right knee. Hizinski asserted a claim against American Grain Trimmers (American) for injury to his right knee while working for American on December 1, 1979, and a claim against Meehan for injury while working for Meehan on October 14, 1989.

A hearing was held before an administrative law judge (ALJ). The ALJ found that in 1979, Hizinski injured his left knee while working at American and, therefore, American was not liable for the complaint of right knee injury. The ALJ further found that Hizinski was entitled to the 33 U.S.C. § 920(a) presumption with regard to the causal nexus between his right knee problems and his employment with Meehan. The ALJ further found that rebuttal had not been established with regard to this condition. The ALJ concluded that claimant was permanently totally disabled, as Meehan did not establish the existence of suitable alternate employment, and awarded benefits based on an average weekly wage of $186. Meehan appealed the decision of the ALJ to the Benefits Review Board of the Department of Labor which affirmed the decision of the ALJ.

## STANDARD OF REVIEW

In LHWCA proceedings the BRB must accept the ALJ's findings unless they are contrary to the law or unsupported by substantial

2

evidence. ***Munguia v. Chevron U.S.A., Inc.,*** **999 F.2d 808 (5th Cir.), rehearing denied, 8 F.3d 24 (5th Cir. 1993), cert. denied, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994)**. On appeal from a decision of the BRB, the Court of Appeals reviews the decision of the ALJ merely to determine that the BRB adhered to the proper standard of review. ***Robinson v. Missouri Min. Co.,*** **955 F.2d 1181, 1183 (8th Cir. 1992)**. While appellate review of legal conclusions is plenary, review of factual findings is limited. ***Brown v. Director, OWCP, U.S. Dept. of Labor*****, 914 F.2d 156, 158 (8th Cir. 1990)**. Factual findings of the ALJ are conclusive if supported by substantial evidence in the record. ***Id.***

## SUFFICIENCY OF CLAIM AND NOTICE

On appeal Meehan argues that it was denied due process by the ALJ awarding benefits on a theory that the claimant, Hizinski, did not assert. Meehan argues that Hizinski was asserting a claim against it for a specific trauma accident occurring on October 14, 1989, which the ALJ found did not occur. Meehan argues that it was not given adequate notice to defend against a claim of cumulative trauma or aggravation of pre-existing condition which was the finding of the ALJ. Meehan argues further on this point that by deciding Hizinski's claim on a theory not presented, the ALJ improperly failed to maintain a position of impartiality.

In conducting a hearing, the BRB is not bound by the technical or formal rules of procedure except as provided in the LHWCA. Nothing within the LHWCA makes the formal rules of procedure applicable. 33 U.S.C. § 923(a). However, 33 U.S.C. § 912(b) requires that the claimant timely give the Deputy Commissioner and his employer notice of his injury, and provides further that "[s]uch notice . . . shall contain . . . a statement of the time, place, nature, and cause of the injury." The claim, like the

3

notice required by § 12 and like the pleadings required in any type of litigation, serves the purposes of notifying the adverse party of the allegations and of confining the issues to be tried and adjudicated. *U.S. Industries Federal Sheet Metal, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor,* 455 U.S. 608, 613 (1982).

The statement of the claim must be more than a mere declaration that the employee has received an injury or is suffering from an illness that is related to his employment; it must contain enough details about the nature and extent of the injury or disease to allow the employer to conduct a prompt and complete investigation of the claim so that no prejudice will ensue. *Id.*

Citing *Larson, The Law of Workmen's Compensation,* the Supreme Court in *U.S. Industries Federal Metal, Inc.*, noted that:

> an informal substitute for a claim may be acceptable if it "identif[ies] the claimant, indicate[s] that a compensable injury has occurred, and convey[s] the idea that compensation is expected." [3A. Larson, The Law of Workmen's Compensation], § 78.11, p 15-9; that "considerable liberality is usually shown in allowing amendment of pleadings to correct . . . defects," unless the "effect is one of undue surprise or prejudice to the opposing party," *id.*, p 15-11; and that "wide latitude is allowed" as to variance between pleading and proof, "[b]ut if the variance is so great that the defendant is prejudiced by having to deal at the hearing with an injury entirely different from the one pleaded, the variance may be held fatal," *id.*, at 15-13--15-14.

*U.S. Industries Federal Sheet Metal, Inc.,* 455 U.S. at 613-14.

Hizinski's claim notified Meehan that he was seeking benefits in regard to injury to his right knee related to his employment. Hizinski alleged that "[w]hile doing heavy hold work carrying wheat bags weighing approximately 110 pounds and carrying them 5 to 20 feet at a time, employee injured his knee." Hizinski alleged in

4

his complaint that the date of his injury was October 14, 1989. In his deposition and at trial, Hizinski testified that his knee was injured on October 14, 1989, when he stepped in a hole between bags of grain and twisted his knee. Nonetheless, the ALJ determined that the evidence did not support a finding of a specific accident as represented but rather that the evidence supported a finding of cumulative trauma or aggravation of preexisting injury. The BRB affirmed the decision of the ALJ.

Hizinski's complaint notified Meehan that he had received an injury to his right knee which he claimed was related to his employment. Furthermore, Hizinski filed a Pretrial Stipulation in which he provided notice to Meehan that he wished to reserve the right to claim that his knee injury was in the nature of a "Gillette" injury or occupational disease. The BRB defined a "Gillette" injury as a cumulative trauma injury under state law. Additionally, three months prior to the hearing herein, counsel for Hizinski sent a letter to the Department of Labor with a copy to the claim representative for Meehan's insurer stating that after having time to consider the injury that the "work [Hizinski] did at Meehan (not the accident he had) temporarily aggravated his knee condition." At the hearing, Hizinski testified that his knee condition became progressively worse over the years. Hizinski notified the Department of Labor in 1985 that his knee was hurting him more and more. In 1986, Hizinski was examined for increasing knee pain by two physicians and prescribed medication. Hizinski's treating physician after October 1989 reflected in his notes that Hizinski was having continuing problems with his right knee.

The record reflects that Meehan was put on notice prior to the hearing date that there was uncertainty as to the nature of Hizinski's injury with a possibility of cumulative trauma. Furthermore, there was substantial evidence presented at the hearing to support the finding of the ALJ. Meehan was not

5

prejudiced by the lack of specificity as to the nature of the injury under the circumstances presented here. The finding of the ALJ does not reflect a lack of impartiality. Meehan's challenge to the sufficiency of the claim and lack of notice is denied.

## SECTION 920(a) PRESUMPTION

Meehan argues on this point that Hizinski was not entitled to the presumption that his claim was within the LHWCA as provided under 33 U.S.C. § 920(a) and that even if he was that the ALJ erred in finding that Meehan failed to rebut the presumption.

Title 33 U.S.C. § 920(a) provides that in any proceeding for enforcement of a claim for compensation under the LHWCA, it shall be presumed that the claim comes within the provisions of the act. However, this presumption does not apply to a claim that has never been made and is, therefore, not properly before the ALJ. ***U.S. Industries Federal Sheet Metal, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor***, **455 U.S. at 612-13.** Before the presumption will attach a claimant must state a prima facie claim for compensation which must at least allege an injury that arose in the course of employment as well as out of employment. ***Id*. at 615**. Arising "out of" *and* "in the course of" employment are separate elements: the former refers to injury causation; the latter refers to the time, place, and circumstances of the injury. ***Id.*** Not only must the injury have been caused by the employment, it also must have arisen during the employment. ***Id***.

Meehan argues that Hizinski is not entitled to the Section 920(a) presumption because he did not elect to proceed under a theory of cumulative trauma and he did not present testimony of a degenerative condition. As addressed above under Meehan's

6

challenge to the sufficiency of the claim, Hizinski did make a sufficient claim for a degenerative condition or cumulative trauma and there was substantial evidence to support the finding of the ALJ. Meehan's claim that Hizinski was not entitled to the § 920(a) presumption is denied.

Meehan argues further in regard to the Section 920(a) presumption that the ALJ erred in finding that the presumption was not rebutted. Meehan argues that once it presented evidence in opposition to the presumption that the presumption vanished. Meehan cites *Del Vecchio v. Bowers*, **296 U.S. 280 (1935)** in support of its position. *Del Vecchio* does not so hold.

*Del Vecchio* holds that if the only evidence presented is by the employer and the evidence is contrary to the claim made, that the case must be decided upon that evidence. *Id. at 193.* However, where the claimant and the employer each offer substantial but conflicting evidence in support of their respective positions, the determination of the ALJ as to the weight of the evidence will not be disturbed. *Id. at 193*.

Meehan argues that there is substantial evidence in the record to rebut the presumption. However, as previously addressed herein, Hizinski also presented substantial evidence in support of his claim. The credibility determinations and considerations of the ALJ as to the weight of the evidence are not for our review. This court may not substitute its judgment for that of the ALJ, *see O'Keeffe v. Smith, Hinchman & Grylls Assoc., Inc.,* **380 U.S. 359, 363 (1965)**.

Meehan's argument that the ALJ erred in finding that it did not rebut the Section 920(a) presumption is denied.

7

**WAGE CALCULATION**

Meehan argues that the ALJ erred in calculating Hizinski's average weekly wage pursuant to 33 U.S.C. § 910. Meehan argues that since Hizinski's 1989 tax return showed gross earnings of $5,287.05 that this amount should have been divided by 52 in accordance with 33 U.S.C. § 910(d) to arrive at an average weekly wage of $101.67.

Title 33 U.S.C. § 910 provides, in pertinent part, as follows:

> Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

> (a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary for a six-day worker and two hundred and sixty times the average daily wage or salary for a five-day worker, which he shall have earned in such employment during the days when so employed.

> (b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings, if a six-day worker, shall consist of three hundred times the average daily wage or salary, and, if a five-day worker, two hundred and sixty times the average daily wage or salary, which an employee of the same class working substantially the (c) If either of the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such average annual earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the

injured employee. whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

> (d)(1) The average weekly wages of an employee shall be one fifty-second part of his average annual earnings.

. . . .

Title 33 U.S.C. § 910(c) applies to intermittent and irregular employment, when application of mathematical formulas provided in other subsections of Section 910 would be unreasonable or unfair, or when insufficient evidence is presented at hearing to permit proper application of the other sections. ***Palacios v. Campbell Industries*, 633 F.2d 840 (9th Cir. 1980)**. The objective of § 910(c) is to arrive at a sum that reasonably represents a claimant's annual earning capacity at the time of his injury. ***Empire United Stevedores v. Gatlin*, 936 F.2d 819, 823 (5th Cir. 1991)**. In determining earning capacity under Section 910(c), the actual wages earned by the employee are not controlling. ***National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1292 (9th Cir. 1979)**. Furthermore, in reviewing rulings of the BRB, which affirmed the ALJ here, this court generally must defer to the Board in its fact-finding capacity, ***id., citing O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 50 (1951)**, as well as in its role as interpreter of the Act. *Id*.

In calculating Hizinski's average weekly wage under section 910(c), the ALJ credited Hizinski's deposition testimony that he worked 116 days in 1984, 57 days in 1985, 129 days in 1986, 39 days in 1987, and 88 days in 1988. The ALJ then noted that Hizinski's tax return for 1989 reflects that he earned $5,287.05, which when divided by 43 days worked, would yield a $122.95 daily wage. The

9

ALJ then multiplied the $122.95 daily wage figure by the number of days claimant worked during each of the preceding 5 years, and determined that claimant had average annual earnings for 1984 through 1989 of $9,675. The ALJ then divided this figure by 52 under section 910(d)(1), to obtain an average weekly wage of $186.

An ALJ may calculate average annual earnings under section 910(c) based on a claimant's earning pattern over a period of years prior to the injury, where, as in the case at bar, all of the years within that period are taken into account. *See Empire United Stevedores v. Gatlin*, **936 F.2d 819, 823 (5th Cir. 1991)**. The calculation by the ALJ of claimant's average weekly wage was reasonable, supported by substantial evidence, and consistent with the goal of arriving at a sum which reasonably represents claimant's annual earnings at the time of his injury. The calculation reasonably took into consideration the number of days that Hizinski averaged per year as a longshoreman and determined an average weekly wage based upon his current daily wage. This method of calculation was not unreasonable. The ALJ did not err in calculating Hizinski's average weekly wage.

## PERMANENT TOTAL DISABILITY

Meehan argues under this point that Hizinski was not entitled to permanent total disability because it established that there were jobs available for Hizinski. A claimant for disability benefits under the LHWCA establishes a prima facie case for total disability by demonstrating his inability to return to his former employ. *See v. Washington Metropolitan Area Transit Authority*, **36 F.3d 375, 380 (4th Cir. 1994)**. The burden then shifts to the employer to rebut disability by proving suitable alternative employment available upon a reasonably diligent search by the

claimant.  *Id*.  An employer may satisfy this burden by proving that the injured employee retains the capacity to earn wages in regular, continuous employment.  *Id*.  Relevant factors in this inquiry include the claimant's age, background, employment history and experience, and intellectual and physical capabilities, and the reasonable availability of jobs in the community for which the claimant is able to compete and which he could realistically and likely secure.  *Id*.

"[I]n order to defeat a claim for benefits as a result of an alleged permanent total disability, the burden is on the employer to prove the existence of a suitable job presently available to the claimant *in the community in which he lives*."  **Haughton Elevator Co. v. Lewis, 572 F.2d 447, 451 (4th Cir. 1978)** and **Godfrey v. Henderson, 222 F.2d 845, 849 (5th Cir. 1955)**.

Hizinski established that he was not able to return to his job as a longshoreman.  The parties then presented conflicting evidence from vocational experts.  Hizinski's vocational expert opined that there was no work in the local economy that Hizinski could perform and the ALJ found this evidence to be most credible.  Meehan has not shown reversible error by the ALJ in evaluating the conflicting evidence and making credibility determinations.

## DELAY IN APPEAL PROCESS

As its final allegation of error, Meehan argues that the delay of over four years from the filing of its notice of appeal from the decision of the ALJ to the issuance of the decision and order of the BRB was unreasonable and a denial of due process.

At some point a delay in the opportunity for administrative and judicial review can amount to a denial of due process.  *See*

11

***Cleveland Bd. of Educ. v. Loudermill,*** 470 U.S. 532, 547 (1985). However, a reasonable delay does not amount to a denial of due process. ***See, id***.

In the case at bar, the delay was not unreasonable. Part of the delay of which Meehan complains was as a result of Meehan's prior appeal to this court of the BRB's denial of a Motion for Stay. Additionally, records were lost in transmission by the BRB which caused the records to have to be reconstructed thereby slowing the process. Meehan's argument of denial of due process by the delay before the BRB is without merit.

The judgment of the BRB is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

12