**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ATLANTIC & GULF STEVEDORES,
INCORPORATED,
Petitioner,

v.

No. 96-2609

WILLIAM C. TAYLOR; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(94-2217)

Argued: October 31, 1997

Decided: January 26, 1998

Before WIDENER and ERVIN, Circuit Judges, and BULLOCK,
Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Widener and Chief Judge Bullock joined.

_____

**COUNSEL**

**ARGUED:** Stan Musial Haynes, SEMMES, BOWEN & SEMMES,
Baltimore, Maryland, for Petitioner. Michael Carl Eisenstein, Balti-
more, Maryland, for Respondents.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Respondent William C. Taylor, a longshoreman, injured his knees while employed by petitioner Atlantic & Gulf Stevedores, Inc. Atlantic & Gulf appeals from the Benefits Review Board's ("BRB") summary affirmance of an Administrative Law Judge's ("ALJ") findings that Taylor's brief stints as a truck driver subsequent to this injury did not constitute suitable alternative employment sufficient to terminate Taylor's disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901-950 (1994), and that a second work-related accident while working as a truck driver was not a supervening cause of Taylor's disability.* Because substantial evidence supported the ALJ's decision that Taylor's work as a truck driver was beyond the medical restrictions placed on him and that the second accident was the natural and unavoidable result of injuries sustained in the first accident, we affirm.

I.

Respondent William C. Taylor injured his head, back, and both knees on November 25, 1981, while operating a forklift in the course of his employment with Atlantic & Gulf Stevedores, Inc. (now I.T.O.

_____

*The BRB never addressed the merits of the appeal. On September 12, 1996, the BRB sent the parties a notice stating that pursuant to the provisions of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 101(d), 110 Stat. 1321, 1321-29 (1996), all appeals to the BRB relating to claims under the Act were deemed to have been affirmed if the case had been pending before the BRB for one year by September 12, 1996. Because Atlantic & Gulf's appeal met these criteria, the BRB informed the parties that the ALJ's decision had been effectively affirmed by the BRB on September 12, 1996, for purposes of their rights to obtain review in the court of appeals.

Corp.). Taylor had ten years of experience as a longshoreman and his regular job on the waterfront involved operating heavy equipment.

After his accident, Taylor was seen by a number of doctors, and eventually had arthroscopic surgery performed on his right knee in April 1982 and on his left knee in January 1983. In October 1983, the doctor who had performed the operations, Dr. Reahl, concluded in a report that Taylor could no longer work as a longshoreman on an unrestricted basis. Dr. Kan, a Board certified orthopedic surgeon who examined Taylor on October 7, 1983, concluded that Taylor would not be able to return to work as a longshoreman and should receive vocational rehabilitation for a job that did not require climbing, standing, or pushing, pulling or lifting anything heavier than 20 pounds. Dr. Kan also stated in a 1984 deposition that Taylor needed to wear a brace to keep his leg from giving out.

Whether Taylor should receive disability payments as a result of this injury, and if so, how much, has been the subject of controversy since 1984. A first hearing on the subject was held before an Administrative Law Judge in June of that year. In his December 1984 order, the ALJ found that Taylor had suffered a temporary total disability which ended on July 23, 1983, could perform alternate employment and was therefore not permanently disabled, and had sustained some degree of permanent partial disability in each knee.

Taylor appealed this decision to the BRB. The BRB reversed and remanded the claim in June 1988, finding that the ALJ had failed to determine whether Taylor could perform his usual work in light of the restrictions placed on him by the physicians, and that the ALJ erred in finding the employer had established the availability of suitable alternative employment.

In October 1988 the ALJ held a hearing on remand. During this second hearing, Taylor testified that he had worked for two companies as a long-distance truck driver for brief periods during 1986 and 1987 until he injured his hand and shoulder in a work-related accident on June 10, 1987. This accident occurred when Taylor attempted to remove a jack from under a pallet. As he tugged, his left knee gave out, causing him to pull his back and shoulder and drop the jack handle on his hand. Taylor admittedly lied to get the truck driving jobs

3

by, inter alia, failing to admit on the application or during physicals that he had suffered a previous work-related injury or had work restrictions due to his knee problems. In the second hearing, Taylor testified under oath that he had suffered pain and weakness in his knees while working as a truck driver.

Based on the second hearing, the ALJ issued an order finding that the second accident was not an intervening cause of Taylor's disability, Taylor was unable to perform his usual employment, and Atlantic & Gulf had failed to demonstrate there were actual job openings that he could perform.

This time Atlantic & Gulf appealed to the BRB. In January 1993 the BRB remanded the case to allow the ALJ to consider specifically whether Taylor's truck driving positions constituted suitable alternative employment and whether the 1987 accident constituted an intervening injury terminating Atlantic & Gulf's liability.

The third hearing was held in May 1993. In his order based on the hearing, the ALJ determined that Taylor was permanently totally disabled as a result of his 1981 accident; his work as a truck driver did not constitute suitable alternative employment because the work was beyond his medical restrictions, he had to lie to get the jobs, and he endured continual pain and weakness on the job; and the 1987 accident was the natural and unavoidable result of the 1981 knee injury.

Atlantic & Gulf again appealed to the BRB, which summarily affirmed the case after it had been pending for more than a year without a decision. Atlantic & Gulf now appeals this summary affirmance to this court, arguing that the ALJ erred in finding that Taylor's truck driving jobs did not constitute suitable alternative employment and that the 1987 accident was not a supervening cause of his disability.

We review the BRB's decision for errors of law and to determine whether the BRB observed its statutorily-mandated standard for reviewing the ALJ's factual findings. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988). Under the Longshore and Harbor Workers' Compensation Act, a compensation order under the Act must be supported by "substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3) (1994); see also

4

O'Keeffe v. Smith Associates, 380 U.S. 359, 362 (1965) (findings of ALJ must be accepted unless they are irrational or unsupported by substantial evidence in record considered as a whole). Substantial evidence has been described as "more than a scintilla but less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 380 (4th Cir. 1994) (citations omitted). In this case the summary affirmation of the ALJ's decision means there is no BRB decision to review; we therefore defer to the ALJ's findings as long as they are supported by substantial evidence, regardless of whether we believe that there are other, more reasonable conclusions that might be drawn from the evidence. O'Keeffe, 380 U.S. at 362; See, 36 F.3d at 380.

## II.

Under the Longshore Act, the employer has the burden of proving that "suitable alternative employment" exists. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988). To do so, the employer must demonstrate that there is a category of jobs that the claimant is capable of performing and, within that category, there exists a job which the claimant could realistically secure. Trans-State Dredging Co. v. Benefits Review Bd., 731 F.2d 199, 201 (1984). A determination that a claimant is disabled turns on the claimant's capacity for work and not on his actual employment. Tann, 841 F.2d at 543. As a result, the fact that a claimant has been employed after an injury does not automatically mean that that work constituted "suitable alternative employment." Shoemaker v. Sun Shipbuilding & Dry Dock Co., 12 BRBS 141, 145 (1980). Under certain limited circumstances, a claimant may still be found to be totally disabled even after a period of employment. See, e.g., Haughton Elevator Co. v. Lewis, 572 F.2d 447 (4th Cir. 1978), aff'g 5 BRBS 62 (claimant's employment in spite of excruciating pain); Paul v. General Dynamic Corp., BRB Nos. 79-363/A (June 12, 1981) (employment only possible due to extraordinary effort); Walker v. Pacific Architects & Engineers Inc., 1 BRBS 145 (1974) (employment merely due to beneficence of employer).

The ALJ's finding that Taylor's job as a truck driver did not constitute suitable alternative employment because it was beyond the medi-

5

cal restrictions placed on him is supported by substantial evidence. The record shows that both physicians who examined Taylor expressly stated that as a result of his knee injury, Taylor was limited to employment in jobs that did not require him to lift more than twenty pounds or to perform work that required him to sit, stand, walk, climb, push, or pull throughout his normal work day. Both of Taylor's jobs as a truck driver exceeded these limitations because they required him to sit for long periods of time and to lift over twenty pounds.

The ALJ also noted that Dr. Kan stated in his 1984 deposition that Taylor's knee was weakened from his injury and likely to give out unless he wore a brace. This testimony was prophetic, as this appears to be exactly what happened when Taylor attempted to work as a truck driver, leading to his subsequent injury.

The unsuitability of Taylor's employment as a truck driver is further buttressed by Taylor's testimony at the hearing, in which he described the pain and weakness he endured continually while working as a truck driver. Taylor also admitted he failed to disclose his 1981 injury or work restrictions to his two trucking company employers. Based on this evidence, we conclude that the ALJ reasonably found that the Taylor's work as a truck driver did not constitute suitable alternative employment.

III.

The ALJ concluded that the 1987 accident was not a supervening cause of Taylor's disability. We agree. While disability that is a result of a subsequent and unrelated accident is not the employer's responsibility, see Leach v. Thompson's Dairy, Inc., 13 BRBS 231 (1981) (finding employer not responsible for disability from heart attack unrelated to back injury sustained at work), a second injury will not be an intervening cause sufficient to terminate the employer's liability when the second injury was the "natural and unavoidable result" of the initial injury, see Wright v. Connolly-Pacific Co., 25 BRBS 161 (1991).

Atlantic & Gulf points out that the 1987 injury was primarily to Taylor's hand. This is true; however, it does not affect the conclusion that Taylor's weak knees caused him to injure his hand. Viewing the record as a whole, there is sufficient evidence to support the ALJ's

6

conclusion that the 1987 accident was the natural and unavoidable result of Taylor's 1981 work-related injury. In the 1993 hearing, Taylor testified that the accident was caused when he pulled on the jack and his leg gave out from under him. Likewise, Dr. Kan's deposition specifically mentioned the possibility of Taylor's knee going out.

This evidence is by no means uncontroverted. In the 1988 hearing Taylor gave testimony suggesting that his back and shoulder, rather than his knees, caused the accident. However, when asked about this testimony in 1993, Taylor sought to clarify his prior testimony and stated specifically that his knee giving out led to the 1987 accident.

Other evidence presented by Atlantic & Gulf shows that when reporting the 1987 accident and receiving treatment for his resulting injuries, Taylor did not mention the role that his knees allegedly played in causing it. However, as stated previously, Taylor had lied about his knees to secure work as a truck driver. It is therefore not suprising that he might have been hesitant to volunteer such information. Taylor also stated in his hearing testimony that after his 1987 injury he simply "never thought" about attributing that accident to his knee injury.

Weighing this competing evidence and its credibility is the ALJ's role, however, not that of an appellate court. See Calbeck v. Strachan Shipping Co., 306 F.2d 693 (5th Cir. 1962); John W. McGrath Corp. v. Hughes, 289 F.2d 403 (2d Cir. 1961). Reviewing the record as a whole, we find that there is certainly more than a scintilla of evidence supporting the ALJ's conclusion. Even if Atlantic & Gulf is correct that there are other, perhaps more reasonable conclusions that could be drawn from the evidence, this court must defer to the ALJ's findings because they are supported by substantial evidence. O'Keeffe, 380 U.S. at 362; See, 36 F.3d at 380.

IV.

We hold that there is substantial evidence that Taylor's work as a truck driver did not constitute suitable alternative employment and that his 1987 injury was not a supervening cause of his disability. Accordingly, we affirm the ALJ's order and the summary affirmance of the BRB.

AFFIRMED

7