VORIS, DEPUTY COMMISSIONER, *v.* EIKEL ET AL.,
DOING BUSINESS AS SOUTHERN STEVEDORING
& CONTRACTING CO., ET AL.

No. 20. Argued October 14, 1953.—Decided November 9, 1953.

*Murray L. Schwartz* argued the cause for petitioner. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Burger* and *Samuel D. Slade.*

*John R. Brown* argued the cause for respondents. With him on the brief was *E. D. Vickery.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This case involves the proper application of the notice provisions of the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.*) by a Deputy Commissioner to the claim of an employee admittedly subject to the provisions of the Act. Section 12 of the Act provides:

> "(a) Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death (1) to the deputy commissioner in the compensation district in which such injury occurred and (2) to the employer.
>
> "(b) Such notice shall be in writing, shall contain the name and address of the employee and a statement of the time, place, nature, and cause of the injury or death, and shall be signed by the employee or by some person on his behalf, or in case of death, by any person claiming to be entitled to compensation for such death or by a person on his behalf.
>
> .    .    .    .    .
>
> "(d) Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prej-

udiced by failure to give such notice, or (2) if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given . . . ." 44 Stat. 1431, 33 U. S. C. § 912.

The Deputy Commissioner found in favor of the claimant, and awarded compensation. The United States District Court for the Southern District of Texas reversed his decision and enjoined further payments, 101 F. Supp. 963. The Court of Appeals for the Fifth Circuit affirmed by a divided court, 200 F. 2d 724. This Court granted certiorari to review the interpretation of the statute. 345 U. S. 955.

The facts as disclosed by the record and found by the Deputy Commissioner are as follows:

The claimant, Earl Porter, was a stevedore employed by the Southern Stevedoring and Contracting Company. On December 19, 1949, while he was working in the hold of the S. S. *Southern States,* the loading equipment struck an electric fixture which, in breaking, ignited some sulphur and created a flash fire. The men fled in terror from the hold, and, while claimant was on the ladder, he was struck by a beam and knocked to the floor, with resulting injuries to his back and shoulder. The Deputy Commissioner found that the injuries were permanent. No written notice was given to the employer until six months after the accident. ·

Several workmen in the stevedoring gang saw the claimant injured. Others, including Leslie Lovely, foreman of the gang in which claimant worked, saw him on the deck immediately after the injury, unable to walk. Some of claimant's fellow workers carried him to a nearby automobile. The walking foreman, Ernest Wisby, who supervised the work of both stevedoring gangs on the

vessel, was immediately notified by the claimant of his injury, and it was Wisby who drove the claimant to his home.

The claimant testified that he asked Wisby to take him to a doctor, but that the latter told him he could not reach one until 7:00 a. m. This was at 4:15 a. m. Claimant testified that he crawled into the house instead of walking because of the pain he was suffering. Wisby did not return to take him to the doctor. Claimant further testified that later on the morning of the accident he sent his wife to the home of Wisby in order to have the latter arrange for a doctor but was told he was asleep, and that two or three days later he went to Wisby's house and demanded that he be taken to a doctor. Wisby admitted this, but denied that he ever agreed to take the claimant to a doctor. He testified that he told claimant that the timekeeper was the only one who had authority to send him to a doctor. Wisby testified that he reported the injury to the timekeeper on the day of the accident.

The record establishes that the usual method of reporting accidents on this job and similar jobs is for the injured employee to report to his immediate supervisor. The immediate supervisors of the stevedores are the gang and walking foremen. When there is a timekeeper on the job, the supervisor sends or takes the employee to the timekeeper who sends the employee to a doctor. Both the supervisor and the timekeeper are instructed to report the injury to the employer or the agent in charge.

Wisby was the man who hired the claimant, directed his work, and paid him his wages for the respondent. The only other person claimed by respondent to be in authority for it on the ship at the time of the accident was A. P. David, whose regular status was that of gearman. He testified that he was left in charge of the job

when B. D. Harris, a partner in the stevedoring firm, left the ship that day to make a trip to Houston. There is nothing in the record to indicate, and there is evidence to the contrary, that the authority claimed for David as representative of the company was known to the foremen or workmen. David had no headquarters on the job; there was no notice given of his change in status from "gearman" to agent in charge; and, during the loading operation at the time of the accident, he was in the galley talking and having coffee with the timekeeper.

It is under these circumstances that the respondent contends, and the courts below held, that the Deputy Commissioner could not find that the employer had the notice required by § 12 (d) of the Act.

This conclusion was not justified. The flash fire was a matter of common knowledge and even terror on the ship. Many witnesses saw the claimant injured or on the deck unable to walk immediately thereafter. His gang foreman knew of the injury. The walking foreman, who hired him and paid his wages, not only knew of it, but had him carried to his car and drove him home, promising, according to claimant's testimony, to later take him to a doctor. This same foreman informed the timekeeper of the injury. Exactly what the timekeeper and Mr. David were doing throughout this exciting and dangerous period does not appear in the record, but certainly they were sufficiently close to be aware of the occurrence.

The respondents would have us hold that unless the claimant can demonstrate that the employer, or the person he selects to be in charge, even another workman selected without notice to the workmen or foremen, has actual personal knowledge of the injury, the requirements of § 12 (d) are not satisfied. Such an interpretation would be indefensible.

The accepted practice on the job was for personal injuries to be reported by the injured party or his foreman

to the timekeeper. It then became the duty of the latter to procure a doctor. When Wisby reported the injury to the timekeeper, the established practice of notice to the employer was substantially complied with. Both Wisby and the timekeeper were under a duty to report the injury to the employer or his agent in charge. The Deputy Commissioner found that the claimant received a crippling injury, that he was illiterate and without instruction or knowledge as to whom to report his injury, and that the practice on the job of reporting injuries for medical assistance as recognized by the employer was followed in his case, and that the failure to supply medical assistance was due to the negligence of the employer or his agents, and that the employer was not prejudiced by the failure to give written notice. These findings are supported by the evidence in the record. Under these circumstances, we hold that the Deputy Commissioner was justified in finding that the employer had notice of the injury within the meaning of § 12 (d). The burden of any failure of these agents to report must fall on the employer, and not on a longshoreman who follows the routine the employer prescribes. Particularly is it true in this case where the claimant, who was totally illiterate and only worked as a stevedore for two days, suffered a painful and crippling injury that necessitated removing him from the job to his home.

This Act must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results. *Baltimore & P. S. B. Co.* v. *Norton,* 284 U. S. 408, 414. The Deputy Commissioner is empowered to hear and determine all questions in respect of claims under the Act. 44 Stat. 1435, 33 U. S. C. § 919 (a). The federal district courts have power to enjoin awards only if they are not "in accordance with law." 44 Stat. 1436, 33 U. S. C. § 921 (b); and see Administrative Procedure Act, 60 Stat. 237, 5 U. S. C. § 1001 *et seq.* The

findings of the Deputy Commissioner are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole. *O'Leary* v. *Brown-Pacific-Maxon,* 340 U. S. 504. Otherwise, reversal must rest on an error of law, such as a misconstruction of the Act. *Norton* v. *Warner Co.,* 321 U. S. 565. The Deputy Commissioner properly construed the law, and his findings are supported by evidence. The Act was designed to provide compensation for the included workers, regardless of whether written notice was given, where the employer has knowledge of the injury, or the employee cannot give the required written notice. Because of our conclusion, it is not necessary to determine whether the claimant could have given written notice to the employer.

The District Court also held that it would have been required to refer the case back to the Deputy Commissioner for further findings on the question of the permanence of the injury and the determination of the compensation rate. These questions, however, are not before the Court. The judgment of the Court of Appeals is reversed and the case is remanded to the District Court for such further proceedings as it deems necessary, not inconsistent with this opinion.

*Reversed.*