647 F.2d 518
 Thomas SMITH, Petitioner,
v.
AEROJET-GENERAL SHIPYARDS, INC., Transport Indemnity
Company, and Director, Office of Workers'
Compensation Programs, U. S. Department
of Labor, Respondents.
Marie Wilson SMITH (Widow of Thomas Smith), Petitioner,
v.
AEROJET-GENERAL SHIPYARDS, INC., Transport Indemnity
Company, and Director, Office of Workers'
Compensation Programs, U. S. Department
of Labor, Respondents.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Petitioner,
v.
AEROJET-GENERAL SHIPYARDS, INC., Transport Indemnity
Company, Thomas Smith and Marie Wilson Smith
(Widow of Thomas Smith), Respondents.
 Nos. 78-3794, 78-3818.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 June 8, 1981.
As Amended on Denial of Rehearing Sept. 28, 1981.
 Richard F. Pate and Stephen J. Flynn, Mobile, Ala., for Thomas and Marie Smith, etc.
 Cowles, Coker & Meyers, Robert L. Cowles, James R. Barfield, Jacksonville, Fla., for Aerojet-General Shipyards, Inc. and Transport Indemnity Co.
 Carin A. Clauss, Sol. of Labor, Joshua T. Gillelan, II, Laurie M. Streeter, Associate Sol., Washington, D.C., U.S. Dept. of Labor, for Director, O.W.C.P.
 Petitions for Review of an Order of the Benefits Review Board.
 Before GODBOLD, Chief Judge, and TJOFLAT and VANCE, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 These consolidated Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. (1976), cases come to us on petition for review of a decision of the United States Department of Labor Benefits Review Board. We reverse the Board's decision and remand the cases for further proceedings.
 
 
 2
 * Thomas Smith brought this action for compensation under the Longshoremen's and Harbor Workers' Compensation Act in 1971. Smith, now deceased, worked as a sandblaster for approximately ten shipyards during the thirteen years preceding his death. As the record reflects, Smith's multi-employer history is typical of longshore work. Longshoremen often migrate to where work is available; in Smith's case, this involved moving as far north as Quincy, Massachusetts and as far south as New Orleans. Smith did, however, maintain a home base at the Southside Shipyard in Jacksonville, Florida, returning there for as long as possible whenever work was available. During his tenure there, the Southside Shipyard was operated by a succession of employers. For purposes of this case we note that Smith worked there for the presently defunct Aerojet General Shipyards, Inc. from 1961 to 1965 and for Jacksonville Shipyards at the same facility from 1966 to 1970.
 
 
 3
 In September of 1971 Smith worked for Atlantic Sandblasting Service, Inc. in Baltimore, Maryland. While on that job he collapsed and was hospitalized. Smith then filed a LHWCA compensation claim against Atlantic Sandblasting. Tests revealed that he was suffering from silicosis, a debilitating lung disease generated by the inhalation of free silica, a material sometimes used in sandblasting compounds. Six months later Smith filed a second LHWCA claim, this time against his next previous employer, Jacksonville Shipyards.
 
 
 4
 Both Atlantic Sandblasting and Jacksonville Shipyards contested Smith's claims, asserting that their sandblasting compounds did not contain free silica at the time of Smith's employment. In 1973, the claims were scheduled for hearing before an administrative law judge in conjunction with four other cases that questioned the effects of sandblasting compounds. Aerojet General was a party in these other cases.
 
 
 5
 The administrative law judge held a prehearing conference for the ordering of proof in these cases. Just before the hearing began, counsel for Aerojet's insurers, Home Indemnity Company and Transport Indemnity Company, learned that Smith intended to add Aerojet as a party in his case. Counsel for Home Indemnity objected to Aerojet's joinder, contending that the lack of adequate notice rendered the company unprepared to defend Smith's claim. After registering this objection, Home Indemnity's counsel departed. Counsel for Transport Indemnity also elected not to participate in the hearing on Smith's case, though he did enlist an attorney for another insurer to stand in for Aerojet. When the hearing commenced, that attorney made the following objection:
 
 
 6
 Mrs. Miller: Bette Miller representing INA. Mr. Cowles, Robert Cowles, representing Transport Indemnity, asked me since he had a deposition, to raise the point on behalf of his Carrier that (counsel for Home Indemnity) has raised on behalf of his.
 
 
 7
 Record, vol. 4 at 9.
 
 
 8
 Smith then moved to add Aerojet as a party; the administrative law judge reserved ruling on the motion and proceeded with the hearing. The judge granted Smith's motion three days later, and after a delay of six months, he issued an order holding that Smith should have been aware of his silicosis more than one year before September of 1971, and thus that his claim was time-barred by section thirteen of the LHWCA:
 
 
 9
 Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefor is filed within one year after the injury or death. If payment of compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the deputy commissioner in the compensation district in which such injury or death occurred. The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.
 
 
 10
 33 U.S.C. § 913(a) (1976).
 
 
 11
 Smith appealed this holding to the Benefits Review Board. Aerojet moved to dismiss Smith's appeal, claiming that its joinder was improper. The Board denied the motion, found Smith's claim timely and reversed, remanding the case for a determination of the responsible employer. Both Atlantic Sandblasting and Jacksonville Shipyards petitioned this court to review the Board's determination of the timeliness of Smith's claims. Aerojet did not join in this petition, nor did it seek review of the Board's determination that it had been properly added as a party.
 
 
 12
 In 1976, we affirmed the Board's decision and remanded Smith's case for further proceedings. We ordered, inter alia, that findings be made concerning Smith's compliance with the LHWCA notice requirement. This requirement is found in section twelve of the Act:
 
 
 13
 Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death, or thirty days after the employee or beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury or death and the employment. Such notice shall be given (1) to the deputy commissioner in the compensation district in which the injury occurred, and (2) to the employer.
 
 
 14
 33 U.S.C. § 912(a) (1976). The Benefits Review Board then amended its remand order and directed the administrative law judge to resolve the section twelve notice issue and assign liability to the responsible employer.
 
 
 15
 On remand, the administrative law judge issued an order to show cause why a compensation order should not be entered. At the show-case hearing, the administrative law judge learned that Thomas Smith had died in March of 1975 and that Smith's counsel had filed a LHWCA claim for death benefits on behalf of Smith's widow and child the following October.
 
 
 16
 These revelations prompted a second show-cause hearing, notice of which was sent to all counsel. At that hearing, no testimony was introduced, but the parties did stipulate that Smith's death was caused by silicosis. Subsequently, the administrative law judge issued a decision denying death benefits to Smith's widow but imposing liability for disability compensation on Aerojet. The judge found that neither Atlantic Sandblasting nor Jacksonville Shipyards was liable for compensation because the companies did not use free silica in sandblasting during the period they employed Smith. The judge identified Aerojet as the last employer under whom Smith was exposed to free silica, and found Transport Indemnity to be the insurer on the risk for Aerojet at that time. The administrative law judge held that Smith's compensation claim and notice were timely as to Aerojet under sections twelve and thirteen and thus that Aerojet was liable under the LHWCA. Concerning the claim for death benefits, however, the judge found that although Smith's widow had filed her claim within one year of death as required by section thirteen, she had failed to give notice of Smith's death within the thirty-day limitations period of section twelve. Her claim was therefore time-barred.
 
 
 17
 On appeal once again, the Benefits Review Board affirmed the denial of death benefits and reversed the award of disability compensation, holding that Smith's widow had failed to give notice of Smith's death within section twelve's thirty-day limitations period, and that Smith's disability claim and notice were untimely under sections twelve and thirteen. Because the Board determined that these claims were time-barred, it did not address the other issues Aerojet presented on appeal, including the company's contention that the administrative law judge had erred in finding that Smith was last exposed to free silica while employed by Aerojet, and that Aerojet's initial joinder was a denial of due process.
 
 II
 
 18
 This case is now before us for the second time. Smith's widow and the Director of the Office of Workers' Compensation Programs, United States Department of Labor, have petitioned for review of the Benefits Review Board determination that Smith's disability claim and his widow's death benefit claim were time-barred. To focus adequately on the issues presented for review, we must examine more closely the holdings below.
 
 
 19
 In ruling on Smith's disability compensation claim, the administrative law judge maintained that section thirteen's provision, "The time for filing a claim shall not begin to run until the employee is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment," is satisfied when a claim is filed within one year of learning of an occupational disease against an employee's last employer in an occupation to which the disease or injury is causally linked. With such a filing, the administrative law judge considered the claim to be timely against all previous employers as well. Alternatively, the judge held that Smith's claim against Aerojet would have been timely if filed within one year of the determination that the employer next in time after Aerojet was not responsible for compensation. Here, the claim was timely because Smith filed against Aerojet before the administrative law judge determined that Aerojet, rather than Jacksonville Shipyards or Atlantic Sandblasting, was the responsible employer. Thus, the effect of this holding was that section thirteen requires filing of a claim against an employer within one year of a determination that the particular employer in question may be held liable for compensation. Such a determination cannot be made in the context of a LHWCA claim until all more recent employers are found not liable. See infra at 523. As to notice of an injury, the administrative law judge reasoned that notice would be timely under section twelve if given prior to a determination of the last injurious employment. Aerojet received notice of Smith's silicosis before it was determined that Smith was last exposed to free silica while under its employ, and thus notice was timely.
 
 
 20
 The Board disagreed with this reasoning, but did not opine further than to assert:
 
 
 21
 (W)e are unwilling to engraft (the administrative law judge's interpretation of sections twelve and thirteen) onto the statutory scheme.
 
 
 22
 Accordingly, the administrative law judge erred in concluding that there was timely notice and filing of the claim against Aerojet and Transport under Sections 12 and 13 and his decision is reversed since it is not in accordance with law.
 
 
 23
 Record Excerpts at 61. Because the Board did not explain what would constitute timely notice, we must treat the decision merely as a rejection of both rationales the administrative law judge used to find notice timely under section thirteen, as well as a rejection of his holding in regard to notice under section twelve. Without further guidance, therefore, there are two questions concerning Smith's disability claim posed for our review. First, when does the one-year limitations period for filing a claim against a previous employer begin to run under section thirteen of the LHWCA? Second, when does the thirty-day period for giving notice to a previous employer begin to run under LHWCA section twelve?
 
 
 24
 Proceeding to the next issue, the Board affirmed the administrative law judge's denial of death benefits, holding that Smith's widow did not give Aerojet notice of Smith's death within thirty days as required by section twelve of the LHWCA. The administrative law judge had recognized that section twelve provides relief from the thirty-day requirement if "some satisfactory reason" exists to excuse the failure to give timely notice:
 
 
 25
 (d) Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (2) if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given; nor unless objection to such failure is raised before the deputy commissioner at the first hearing of a claim for compensation in respect of such injury or death.
 
 
 26
 33 U.S.C. § 912(d) (1976) (emphasis added). He held, nevertheless, that no such excuse existed in Smith's case. Record Excerpts at 44. The Board affirmed this holding without discussing the issue of excuse. Thus, the question we must review in regard to the death benefits claim is whether, given the circumstances of this case, section twelve effectively bars Smith's widow's recovery.
 
 
 27
 Finally, respondent Aerojet contends on this appeal that the Board's refusal to sanction either disability or death benefits must be upheld because the company's initial joinder was a denial of due process, and therefore all subsequent rulings implicating Aerojet in Smith's case are necessarily a nullity as regards Aerojet.
 
 III
 A.
 
 28
 When does the one-year limitations period of section
 
 
 29
 thirteen of the LHWCA begin to run on a claim
 
 
 30
 against a previous employer ?
 
 
 31
 We believe the question of when section thirteen's limitations period begins to run on a claim against a previous employer turns on the law governing liability under the LHWCA. The Act assigns disability liability according to the last employer doctrine. This doctrine provides that "the last employer in whose employment an employee was exposed to an injurious stimuli (is) liable for the full amount of the award with no apportionment of damages between successive employers." United Brands Co. v. Melson, 594 F.2d 1068, 1073 (5th Cir. 1979). See also Cordero v. Triple A Machine Shop, 580 F.2d 1331 (9th Cir. 1978); Travelers Ins. Co. v. Cardillo, 225 F.2d 137 (2d Cir.), cert. denied, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). Thus, given a succession of employers, no single employer may be held liable for a disability award until the next more recent employer is exculpated. In Smith's case, for example, Jacksonville Shipyards could not be liable for compensation until it was determined that Atlantic Sandblasting, the more recent employer, was free of responsibility. Aerojet, therefore, could not have been subject to liability for Smith's disability until both Atlantic Sandblasting and Jacksonville Shipyards were both exonerated. This occurred at the second hearing before the administrative law judge, approximately two years and seven months after Smith had filed his claim against Aerojet.
 
 
 32
 To put matters into perspective, Smith filed his claim against Aerojet more than one year after he learned that his disease was related to his occupation, and more than two years before an adjudication that Aerojet could be the responsible employer. If we held that section thirteen's one-year period begins to run on claims against all potentially liable employers when the employee learns that his affliction is occupationally derived, the employee would have to file against all past employers even though the last employer doctrine precludes liability for any but the last responsible employer. In Smith's case, Smith would have had to file claims against each of the ten shipyards that employed him, though only one of those shipyards could be liable for compensation. Thus, ten claims would have to be filed when, theoretically, only one might have been required.
 
 
 33
 Section thirteen should not be interpreted to impose onerous filing requirements on claimants, nor to create a deluge of claims on the already burdened compensation system. Rather, section thirteen should be interpreted in light of the Act's assignment of liability and read to require filing of a claim against an employer within one year of the date an employee becomes aware, or should have become aware, that a particular employer may be subject to liability. A claimant should not be time-barred on a claim against an employer because the claimant failed to file against that employer before it could be held liable as a matter of law. By analogy to the Third Circuit's construction of "knowledge" in LHWCA sections 12(d) and 30(f), we hold that "awareness," as it appears in section thirteen, must refer to an awareness on the part of an employee "of an injury sustained or an ailment incurred as a result of working conditions for which the employer is responsible." Sun Shipbuilding & Dry Dock Co. v. Bowman, 507 F.2d 146, 151 (3d Cir. 1975) (emphasis added), quoted with approval in Strachan Shipping Co., 571 F.2d 968, at 972 (5th Cir. 1978). See also Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J.Super. 187 (Ap.Div.), 139 A.2d 436, cert. denied 27 N.J. 398, 143 A.2d 9 (1958).
 
 
 34
 Therefore, we hold that the one-year limitations period begins to run on a claim against a previous employer once an employee is aware, or should be aware, that liability may, under the last employer doctrine, be asserted against a particular employer. Here, Smith filed his claim against Aerojet well before the company could have been held legally responsible for Smith's disability compensation, and thus his claim was timely under section thirteen.
 
 B.
 
 35
 When does the thirty-day period for giving notice of injury
 
 
 36
 to a previous employer commence under section
 
 
 37
 twelve of the LHWCA ?
 
 
 38
 The same reasoning we employ to determine the commencement of section thirteen's limitation period for filing a claim controls section twelve's notice requirement. An employer cannot reasonably expect notice of potential liability until facts are ascertained that, as a matter of law, make that employer potentially liable. To hold otherwise would be to require a longshoreman to file numerous notices that, at best, could provide only the most speculative notice.
 
 
 39
 It is clear that the primary purpose of section twelve's notice requirement is to give an employer and its insurer the opportunity to investigate a claim for compensation. See Bethlehem Steel Co. v. Parker, 72 F.Supp. 35, 37 (D.Md.), aff'd, 163 F.2d 334 (4th Cir. 1947). See also Strachan Shipping Co. v. Davis, 571 F.2d 968, 972 (5th Cir. 1978); Good Impressions, Inc. v. Britton, 169 F.Supp. 866, 870 (D.D.C.1958). We believe requiring a claimant to notify all his (potentially quite numerous) past employers of his occupational disease within thirty days would be extremely onerous while not furthering section twelve's investigatory purpose. In sum, we doubt the practicality of requiring notice, geared toward allowing an employer to defend a claim, to occur before the notified employer can legally be called upon to defend the claim, and we refuse to attribute such a purpose to Congress.
 
 
 40
 Smith's notice to Aerojet, therefore, was timely because he notified the company before it was determined that all employers more recent than Aerojet were not liable. Aerojet received notification of Smith's claim before Smith had an actionable claim against the company, and this is sufficient under the Act.
 
 C.
 
 41
 Given the circumstances of this case, does the record reveal
 
 
 42
 a satisfactory reason excusing Smith's widow's
 
 
 43
 failure to comply with section twelve's
 
 
 44
 thirty-day notice of death requirement ?
 
 
 45
 The administrative law judge found that the circumstances of this case did not reveal a satisfactory reason for Mrs. Smith's failure to provide Aerojet with notice of Smith's death within thirty days of learning that it was related to his employment with Aerojet. Although we are reluctant to disturb the findings of the administrative law judge, Tampa Ship Repair & Dry Dock Co., Inc. v. Director, Office of Workers' Compensation Programs, 535 F.2d 936, 938 (5th Cir. 1976), we believe that, viewed in the liberal light appropriate when applying the LHWCA, Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 92, 98 L.Ed. 5 (1953), his findings are not supported by substantial evidence. Strachan Shipping Co., 571 F.2d at 974.
 
 
 46
 Our mandate under the Act is to apply the terms of the LHWCA in a principled fashion, striving to avoid "harsh and incongruous results" whenever appropriate in light of the language and intent of the Act. Voris, 346 U.S. at 333, 74 S.Ct. at 92. We must "not construe the Act so as to enable (employers) to escape liability to persons entitled to recover for an admittedly compensable death by reading into it technical restrictions on the tolling of the filing period which are inconsistent with the purpose of the Act." Blackwell Construction Co. v. Garrell, 352 F.Supp. 192, 196-97 (D.D.C.1972).
 
 
 47
 In our view, it is the accumulated impact of the circumstances of Smith's case that provides a satisfactory reason for Mrs. Smith's failure. The record reveals that Mrs. Smith is barely literate. At the time of her husband's death, his claim for disability compensation had been in litigation almost four years; such a delay surely served to make the prospect of any compensation extremely remote, and the question of promptness seemingly irrelevant. Moreover, Mrs. Smith did not delay giving notice of death for the illicit purpose of receiving continuing disability payments, as no such payments were forthcoming before Smith's death. Of special significance is the negligible effect of Mrs. Smith's failure on Aerojet. Section twelve's purpose as discussed above, is to provide employers and their insurers an opportunity to investigate claims. Aerojet had been investigating Smith's silicosis disability claim for at least two years prior to receiving notice of Smith's death due to that same disease. Furthermore, Aerojet had stipulated that Smith died from silicosis, see supra at 521. Thus obviating any argument concerning the foundation of his widow's death benefit claim and rendering unnecessary any extensive investigation of the cause of death. Aerojet has never demonstrated that it suffered any prejudice due to Mrs. Smith's untimely notice, and the administrative law judge found specifically that the record was devoid of any evidence of such prejudice. Finally, it is uncontested that Mrs. Smith filed her claim for benefits well within section thirteen's limitation period and that Aerojet has had ample opportunity to investigate the claim since then. The sole argument offered to preclude Mrs. Smith's recovery is her failure to comply with purely procedural matters; there is no question of any injury caused by that failure except the alleged injury to the procedural integrity of the Act. When these circumstances are added together, we believe that a satisfactory excuse exists under section twelve, and that Mrs. Smith's claim should not be time-barred due to her failure to comply with the thirty-day notice requirement.
 
 D.
 
 48
 Finally, we come to Aerojet's contention that the company has been deprived of due process throughout the long history of these proceedings. Aerojet argues that the company's initial joinder in Smith's case was a denial of due process because the company had inadequate notice and opportunity to defend against his claim. The company asserts that the Board properly reversed the compensation order because it was based upon evidence gathered at a hearing at which Aerojet had no opportunity to either present evidence or cross-examine witnesses. See supra at 522. In response, petitioners argue that the record reflects, at several points in this exceedingly lengthy proceeding, Aerojet's waiver of this due process argument.
 
 
 49
 Our resolution of Aerojet's due process claim is limited necessarily to the specific, procedural facts of this case, and our holding thus must be read within the horizons of the record before us. As discussed above, on the first appeal to the Benefits Review Board, Aerojet moved to dismiss on the same due process grounds the company advances here. In its opinion, the Benefits Review Board denied that motion. This portion of the Board's holding certainly adversely affected Aerojet. Atlantic Sandblasting and Jacksonville Shipyards were also parties to the first Board proceeding. They too were adversely affected by the Board's determinations. They, however, filed petitions with the fifth circuit for review of the Board's order. Aerojet did not seek review of the Board's decision. It is clear from the record that the parties to the Board decision, at the time it was rendered, perceived that it would be conclusive absent a petition to the fifth circuit.
 
 
 50
 The fifth circuit entertained these petitions on their merits. Implicit in this action, which met with no jurisdictional objection, is the holding that the Board decision was subject to immediate judicial review. While a contrary jurisdictional holding might well be proper today, it is clear that the court and the parties then perceived immediate review to be an appropriate avenue. It is uncontested, moreover, that despite the availability of review, Aerojet chose not to participate, The record reflects that, in the context of the procedural history of this case, Aerojet's choice to by-pass fifth circuit review of the denial of its due process claim amounted to a conscious abandonment of that claim. By avoiding review when it was initially available, Aerojet effectively waived any further pursuit of its due process claim. This failure must, therefore, stand as a bar to Aerojet's attempted resurrection of its claim here. It is, therefore, rejected.
 
 
 51
 A decision rendered by the Board pursuant to this subpart shall become final 60 days after the issuance of such decision unless a written petition praying that the order be modified or set aside, pursuant to section 21(c) of the LHWCA, is filed in the appropriate U. S. court of appeals prior to the expiration of the 60-day period herein described, or unless a timely request for reconsideration by the Board has been filed as provided in § 802.407.
 
 
 52
 20 C.F.R. § 802.406 (1980) (Amendment since petitioner's case irrelevant. See 20 C.F.R. § 802.406 (1974)). Accordingly, the Board's denial of Aerojet's due process claim became final when Aerojet failed to pursue its adverse determination in the court of appeals. This due process claim has, therefore, been litigated to a concluding judgment, and that judgment stands as a bar to Aerojet's attempted resurrection of the claim here. For this reason, we reject Aerojet's due process argument.
 
 IV
 
 53
 For the foregoing reasons, the decision of the Benefits Review Board is REVERSED. The cause is REMANDED for resolution of all remaining issues, including the matters of medical expenses, liability for attorneys fees, and the validity of the administrative law judge's finding in regard to Smith's last exposure to free silica.
 
 
 54
 REVERSED AND REMANDED for further proceedings.