**Jesse HOLCOMB, Petitioner,**

v.

**ROBERT W. KIRK AND ASSOCIATES, INC., et al., Respondents,**

and

**U. S. Department of Labor, Respondent.**

No. 80–5246.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 8, 1981.

John H. Evans, Michael L. Reda, Titusville, Fla., Joshua T. Gillelan, II, Washington, D. C., for petitioner.

Gilbert T. Renaut, U. S. Dept. of Labor, Washington, D. C., for respondents.

Paul Smalbein, Orlando, Fla., for Florida Farm Bureau Mutual Ins. Co.

Before KRAVITCH and HENDERSON, Circuit Judges, and THOMAS *, District Judge.

DANIEL HOLCOMBE THOMAS, District Judge:

This is a petition for review by the claimant, Jesse Holcomb, from the affirmance by the Benefits Review Board of the decision and order of the Administrative Law Judge, pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 *et seq.*

In 1974, United Steel Corporation purchased a naval landing craft, the KRISTA K, which was in extreme disrepair. The vessel was moved to a marina where engine, electrical and hull repairs were to be performed by various contractors. After completion of repairs, the KRISTA K was to be used to transport equipment to Central America. Robert W. Kirk had some interest in the repair and safekeeping of this vessel. The exact nature of his interest does not appear in the record. While Kirk frequently referred to the vessel as "my boat", he also stated that it was in fact owned by United Steel Corporation. However, the ownership is not at issue in this matter. Kirk was also President of Robert W. Kirk & Associates, Inc., a real estate brokerage and management company. The claimant, Jesse Holcomb, is a fifty-three year old man with a second grade education. Mr. Holcomb, having had pre-existing back and arm disability, could only perform light work. Kirk hired Holcomb in early January 1975, for the primary duty as watchman for the KRISTA K. He did this seven days a week, from dusk until morning. He would perform other chores. Holcomb's primary function was to see that no one boarded the KRISTA K, this in order to protect against vandalism and theft. He regularly watched the KRISTA K from a pick-up truck furnished him by Kirk, but he frequently went aboard in the performance of his duties.

On March 13, 1975, about 9:30 p. m., Holcomb was aboard the KRISTA K when he saw another boat coming alongside. In order to watch the approaching boat, he attempted to cross the deck and fell through an open hatch. As a result of the injuries he sustained in the fall, he is permanently and totally disabled. Holcomb filed a claim for workmen's compensation benefits under Florida law. His employer and insurance carrier defended the claim with the assertion that the case was within the coverage of the Longshoremen's Act. The defense was sustained and Holcomb was denied any compensation under Florida law. He then filed the Longshoremen's Act claim, which gives rise to this proceeding. The Administrative Law Judge held that Holcomb was not "engaged in maritime employment", so as to meet the definition of a covered employee. 33 U.S.C. § 902(3). The

---

* District Judge of the Southern District of Alabama, sitting by designation.

Benefits Review Board on appeal under the Longshoremen's Act, Section 21(b)(3), by a divided court affirmed. Holcomb and the Director then instituted the present review proceedings.

In this petition, the petitioners present three issues for review:

1. Whether employment that is performed aboard a vessel afloat in navigable waters, without more, is "maritime employment" within the Longshoremen's Act § 2(3).

2. Whether employment as a vessel watchman is "maritime employment" within Longshoremen's Act § 2(3).

3. Whether the Florida administrative tribunal's judgment sustaining the affirmative defense of the employer and carrier to Hoecomb's state compensation claim—that his injury was not compensable under the state law because it was within the coverage of the Longshoremen's Act—should have foreclosed either, (a) the employer's contrary assertion or (b) relitigation of the question, in the Longshoremen's Act proceedings.

Of course, the question is whether or not Holcomb at the time in question, was covered by the Longshoremen's & Harbor Workers' Compensation Act. Section 3(a) of the Act is as follows:

> Compensation shall be payable under this act in respect of disability or death of an *employee*, but only if the *disability* or death results from an injury occurring upon the *navigable* waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). \* \* \* 33 U.S.C. § 903(a) (1976). (emphasis added)

The undisputed evidence shows that Holcomb, at the time of his injury, was aboard the KRISTA K upon navigable waters. It is undisputed that Holcomb sustained an injury as above defined and that the injury resulted in "disability".

■ The two requirements, that the injured worker have been "an employee" as defined in Section 2(3) of the Act and that the location of the injury was upon navigable waters, have come to be known as the status and situs test, both of which must be met in order for coverage to attach. *See, P. C. Pfeiffer and Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Northeast Marine Terminal Company v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 32 L.Ed.2d 320 (1977).

There is no dispute that the situs of Holcomb's injury was upon the navigable waters of the United States. Therefore, his disability is compensable under the Act if he was, at the time of the injury, an "employee" within the meaning of the Act. Section 2(3) is as follows:

> The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations and any harborworker, including ship repairman, shipbuilder, and shipbreaker ...."
> 33 U.S.C. § 902(3) (1976).

Both from the face of Section 2(3) and in light of its legislative history,[1] the occupations and activities expressly included in the general term "maritime employment" are not exhaustive under its statutory scope. *Tri-State Terminals, Inc. v. Jesse*, 596 F.2d 752 (7th Cir. 1979). Therefore, a worker engaged as a vessel watchman is a Section 2(3) "employee" if it can reasonably be concluded either that he is within the intended scope of the term "harborworker" or at the time of injury, his employment was inclusive within the general term "maritime employment".

■ As found in *Jacksonville Shipyards v. Perdue*, 539 F.2d 533 (5th Cir.

---

1. E.g., S.Rep.No.92–1125, 92d Cong., 2d Sess. 13 (1972); H.R.Rep.No.92–1441, 92d Cong. 2d Sess. 10 (1972) U.S.Code Cong. & Admin.News 4698 ("longshoremen, harborworkers, ship repairmen, shipbuilders, shipbreakers, and other employees engaged in maritime employment").

Cf. S.Rep., supra, 16 ("does not exclude other employees traditionally covered") H.R.Rep., supra 14, U.S.Code Cong. & Admin.News at 4711 ("includes any employee engaged in maritime employment, any longshoreman or other person, etc.").

1976)[2], at page 541, "In deciding each appeal, we must remember that the Act is to be liberally construed in favor of injured workers, *see Voris v. Eikel*, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953). We were also bound by a statutory presumption that an individual claim comes under the Act's coverage. 33 U.S.C. § 920(a)."

Again, on page 545 in *Jacksonville Shipyards, supra*, "Our conclusion is that, in the exercise of its discretion Congress could probably determine that 'new conceptions of maritime concerns' justified the extension of compensation coverage to workers in the immediate waterfront area who participate in ongoing shipbuilding operation. As the legislative history makes clear, Congress was concerned that under the former Act maritime workers were covered over the waters but not covered while performing similar or related work on shore. The inequities of the pre-1972 Act in this regard are obvious, and we feel that this concern was a 'maritime' one within the meaning of the Admiralty Clause. We have already indicated that, in defining 'maritime' concerns, we will not be limited by the rules which apply to tort and contract litigation."

Holcomb was employed to watch the KRISTA K which was in port for repairs, having aboard much sophisticated electronic gear. Within the included activities in Section 2(3) is harborworker, including ship repairman, shipbuilder and shipbreaker. While the word "watchman" is not set out in the statute, as held in the *Tri-State Terminals* case, *supra*, the included general terms of Section 2(3) are not exhaustive. The reasoning in *Jacksonville Shipyards, supra*, page 543, is helpful in the instant case. There the claimant, Nulty, was building a piece of woodwork which was to be installed in a new ship that had been launched but not yet commissioned. Most of Nulty's work was performed in the shop, 300 feet from where the ship was berthed, although at times he would go aboard a vessel to take measurements or to install or repair some woodwork. The Administrative Law Judge, the Benefits Review Board and the Court found that Nulty was working as a shipbuilder at the time of his injury, thus satisfying Section 902(3). "In our view, the only reasonable conclusion is that Nulty was directly involved in an ongoing shipbuilding operation." 539 F.2d at 544.

■■ As further found in *Jacksonville Shipyards, supra*, at pages 539–540, "Our holding is that an injured worker is a covered 'employee' if at the time of his injury (a) he was performing the work of loading, unloading, repairing, building, or breaking a vessel, or (b) although he was not actually carrying out these specified functions, he was 'directly involved' in such work." While the word "watchman" was not included by Congress in the Section, Footnote 18 cited on page 540 is very interesting. Footnote 18 reads:

See Gorman, The Longshoremen's and Harbor Workers' Compensation Act—After the 1972 Amendments 6 Journal of Maritime Law and Commerce 1, 10 (1974). By this holding, we do not mean to suggest that future cases may not bring to light other types of covered work which cannot be characterized as loading, unloading, repairing, building or breaking, and which are not 'directly involved' with these five types of work, but which nevertheless are sufficiently similar to fall within the Congressional scheme. No such additional category of covered work appears in the cases before us, but we will not foreclose the possibility of such categories arising in future litigation.

Sections 3(a) and 2(3) first appeared in the 1972 amendment, but it must be remembered that the 1927 statute had coverage provisions which were not withdrawn by the 1972 amendment. In dealing with Congressional intent concerning the 1972 amendment, we find on page 666 of *Fusco v. Perini North River Assoc.*, 601 F.2d 659 (2nd Cir. 1979), the following:

When Congress did deal with coverage, it did not undertake a general study of the subject. Congress did not address itself

---

2. Vacated and remanded on other grounds, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1979);

575 F.2d 79 (5th Cir. 1978); aff'd 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979).

to the problems raised in Parker, Davis, Pennsylvania Railroad, Calback or cognate lower federal court cases, nor did Congress comment upon the Calback doctrine that it was the Congressional purpose to give a federal compensation remedy to all workers, except crew members, injured seaward of the Jensen line. Congress took it for granted that injuries occurring upon water were covered and would remain covered. There was no indication that Congress considered withdrawing existing coverage or eligibility. What concerned Congress was injuries on land.

The case of *Puget Sound Navigation Co. v. Marshall*, 31 F.Supp. 903 (W.D.Wash. 1940) held that employment as a watchman aboard a ferry boat laid up between its weekend runs, was sufficiently maritime in nature for coverage under the pre-1972 LHWCA, where an employee was drowned in navigable waters in the course of such employment.

In *Hillcone S.S. Co. v. Steffen*, 136 F.2d 965 (9th Cir. 1943), the Ninth Circuit held that a watchman or caretaker injured in the course of his employment aboard a laid up steamship to have been engaged in maritime employment for purposes of coverage of pre-1972 LHWCA. The Deputy Commissioner had denied coverage on the ground that the employee's service at the time of his alleged injury was not maritime in character. The district judge reversed the finding of the Deputy Commissioner and was affirmed by the Ninth Circuit Court of Appeals. The Court noted that the employment fell under none of the listed exceptions to the Act's coverage and that the job of caretaker or watchman on a vessel was regarded as being related to navigation and hence falling within the terms of the Act.

In *Union Oil Co. v. Pillsbury*, 63 F.2d 925 (9th Cir. 1933), the Ninth Circuit held that a former third officer of a ship laid off when the ship entered port and later rehired as a night watchman while the ship underwent overhaul was engaged in maritime employment when shot by a burglar in the performance of his night watchman duties. *Rex Investigative and Patrol Agency, Inc. v. Collura*, 329 F.Supp. 696 (E.D.N.Y.1971) affirmed the deputy commissioner's finding that an injured watchman was covered under the pre-1972 LHWCA, even though his duties were primarily on the pier or the dock and that his presence on navigable waters when injured was merely a temporary incident to his employment.

There are also several statements of interest in the case of *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). On page 264 of this opinion on page 2357 of 97 S.Ct. we find: "But with the definition of 'navigable waters' expanded by the 1972 Amendments to include such a large geographical area, it became necessary to describe affirmatively the class of workers Congress desired to compensate. It therefore added the requirement that the injured worker be 'engaged in maritime employment', which it defined to include 'any longshoreman or other person engaged in longshoring operations, and any harbor worker, including a ship repairman, shipbuilder, and shipbreaker, but . . . not . . . a master or member of a crew of any vessel. . . ." [3]

Again on page 268, 97 S.Ct. on page 2359, of *Northeast Marine Terminal, supra*, we find language particularly appropriate for the instant case. "The Act 'must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.' "

We find that Holcomb at the time in question, was covered by the Longshoremen's and Harbor Workers' Act. A watchman of a vessel docked in navigable waters at a ship repair yard for the purpose of being readied for sea who is injured aboard ship while in the performance of his duties

---

**3.** There is an interesting article in Vol. 64, No. 1 of the Virginia Law Review dated February 1978, on page 99, entitled, "Longshoremen, Longshoring Operations and Maritime Employment: A Dual Test of Status after Northeast Marine Terminal v. Caputo." This article deals primarily with longshoremen, but this Court finds it helpful in that it is analogous to harborworkers.

is surely within "maritime employment". His work was certainly an "integral part"[4] of and "directly involved in an ongoing ship repair operation."[5] We find that he meets both the "situs" and "status" requirements of the 1972 Act.

We do not hold that every watchman of a vessel in navigable waters comes under the Longshoremen's Act. We do hold that under the facts of this case, Holcomb, the petitioner, is covered under the Act.

Having disposed of the first two issues raised by the appellant, there is no need to address the third issue.

REVERSED and REMANDED for Findings of Fact required for the entry of an award of benefits under the Act.

**4.** See, pg. 271, 97 S.Ct. p. 2361, *Caputo, supra.*   **5.** See, pg. 544, *Jacksonville Shipyards, supra.*