876 F.2d 1455
 Winzer JORDAN, Petitioner,
v.
BENEFITS REVIEW BOARD OF the UNITED STATES DEPARTMENT OF
LABOR and Director, Office of Workers'
Compensation Programs of the United
States Department of Labor, Respondents.
 No. 88-7321.
 United States Court of Appeals,
Eleventh Circuit.
 May 26, 1989.
 
 Thomas E. Johnson, Leslie Ann Jones, Chicago, Ill., for petitioner.
 Linda M. Meekins, Clerk, Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., Donald S. Shire, Mary Heln Mautner, John Jeffrey Ross, Barbara Johnson, U.S. Dept. of Labor, Washington, D.C., Lawrence W. Rogers, Director, Bette J. Briggs, Mark S. Flynn, Office of Workers' Compensation Programs, Washington, D.C., for respondents.
 
 
 1
 Petition for Review of an Order by the Benefits Review Board of the United States Department of Labor.
 
 
 2
 Before TJOFLAT and EDMONDSON, Circuit Judges, and ATKINS*, Senior District Judge.
 
 ATKINS, Senior District Judge:
 
 3
 Winzer Jordan petitions for a review of a decision of the Benefits Review Board ("Board") which affirmed a decision of an administrative law judge ("ALJ") denying benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. The decision appealed from is affirmed in part and reversed and remanded in part.
 
 FACTS
 
 4
 Winzer Jordan worked as a coal miner between 1931 and 1950; he shoveled coal or coal dust. In the early 1950s, Jordan moved to Chicago where he worked at various jobs. He left his last job in 1975 after he was seriously injured in an automobile accident.
 
 
 5
 On April 16, 1973, Jordan filed a claim for black lung benefits under Part B of the Black Lung Benefits Act ("Act"), 30 U.S.C. Sec. 901 et seq. The Social Security Administration ("SSA") denied this claim on October 12, 1973; Jordan filed a request for reconsideration. When the SSA denied this request, Jordan sought and received a hearing before an ALJ. The ALJ found that Jordan did not suffer from pneumoconiosis within the meaning of the Act and its applicable regulations.
 
 
 6
 Jordan filed a second claim on March 22, 1977, under Part C of the Act.[1] He also elected to have his previously denied Part B claim reviewed by the Department of Labor ("DOL") pursuant to the Black Lungs Benefit Reform Act of 1977 ("BLBRA"). The Office of Workers' Compensation Programs ("OWCP") of the DOL merged the claims and on May 22, 1979, denied benefits.[2] OWCP informed Jordan that the evidence in his file was insufficient to establish that he suffered from pneumoconiosis within the meaning of the Act, that he was totally disabled, that he had a condition caused by coal mine employment, or that he had worked the minimum number of years to qualify.
 
 
 7
 Jordan supplemented his application. OWCP denied his claim by letter on March 20, 1980. The denial notice was a form CM-1000 which listed reasons for the initial denial and explained the methods by which the claimant could pursue his claim. Enclosed with the letter was the DOL's guide for submitting additional evidence which specified evidence that might be pertinent to a claim. The letter specifically stated that Jordan's claim had been denied because the evidence in his file failed to show that he was totally disabled by black lung disease. It defined "totally disabled" and explained that the claimant could submit additional evidence or request a hearing within sixty days. The three elements for proving entitlement were listed along with the specific type of medical or other evidence needed for each element of proof. The letter stated that, if a claimant took no action within sixty days, his claim would be deemed abandoned and advised the reader that he may wish to obtain a representative to ensure full protection of all rights.
 
 
 8
 On December 16, 1981, over a year after his claim was denied, Jordan, with the help of the Black Lung Association, requested that his claim be reopened and reconsidered pursuant to the eligibility criteria in effect when the claim was filed. As grounds, Jordan asserted that he never intended to abandon his claim, that he had difficulty understanding the denial letter, and did not know where to go for help. In the alternative, Jordan asked that his letter be considered as a new claim subject to the then criteria for eligibility.
 
 
 9
 After considering the additional medical evidence submitted by the Black Lung Clinic Program, the OWCP denied the claim. Jordan requested a hearing at which he testified that he began experiencing breathing difficulties before he left Alabama. He also testified that he was transferred while working at Sara Lee Bakery because of breathing problems. At the time of the hearing, Jordan claimed that he had difficulty climbing stairs, could walk no more than one block, and coughed up phlegm. The medical evidence included a recent x-ray which was read as positive for pneumoconiosis. Out of four doctors who testified, one found that Jordan had possible pneumoconiosis and another diagnosed Jordan as suffering from pneumoconiosis related to dust exposure from coal mining employment.
 
 
 10
 The ALJ ruled that, because Jordan had filed his last claim for benefits after March 31, 1980, and because his earlier claims for benefits had been abandoned, he had to establish entitlement under Part 718 regulations.[3] The ALJ refused to consider the constitutional challenge to the denial notice. The ALJ found that Jordan had thirteen years and one month of coal mine employment and that the most recent x-ray established the existence of pneumoconiosis. The ALJ also determined, however, that Jordan could not prove disability under the various regulation sections because the blood gas and pulmonary studies did not yield qualifying values under section 718.204(c)(1) or (2). The judge also found that the physician's report submitted under section 718.204(c)(4) was insufficient because it failed to indicate if the information provided under the medical assessment portion of the form was the physician's opinion or whether it constituted the patient's own assessment of his physical limitations.
 
 
 11
 The Board affirmed the ALJ's refusal to reopen the 1973 and 1977 claims, rejected the constitutional challenge to the Form CM-1000 denial letter, and affirmed the ALJ's ruling that Jordan is not totally disabled due to pneumoconsiosis.
 
 STANDARD OF REVIEW
 
 12
 The petitioner's contention that the denial notice (form CM-1000) violates the due process rights of claimants by failing to adequately advise them of the reason for denial of benefits and the opportunity for a hearing is a question of law and subject to de novo review by this court. Voris v. Eikel, 346 U.S. 328, 334, 74 S.Ct. 88, 92, 98 L.Ed. 5 (1953); Combs v. Ryan's Coal Co. Inc., 785 F.2d 970, 976 (11th Cir.1986); 5 U.S.C. Sec. 706(2).
 
 
 13
 The question of the claimant's total disability under Part 718 regulations is factual and therefore the ALJ's finding should be upheld if supported by substantial evidence. Stomps v. Director, OWCP, 816 F.2d 1533, 1534 (11th Cir.1987).
 
 DUE PROCESS
 
 14
 The threshold question in a procedural due process analysis asks whether the challenged government action deprived the claimant of a liberty or property interest that is protected by the due process clause. Brock v. Roadway Express, Inc., 481 U.S. 252, 107 S.Ct. 1740, 1746, 95 L.Ed.2d 239 (1987) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985)); Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 2708-10, 33 L.Ed.2d 548 (1972). The Supreme Court addressed the question of the termination of benefits already being received in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), but has yet to find that applicants for benefits have a legitimate claim of entitlement or a property interest protected by the due process clause. See Lyng v. Payne, 476 U.S. 926, 942, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921 (1986) (citing Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305, 320 n. 8, 105 S.Ct. 3180, 3189 n. 8, 87 L.Ed.2d 220 (1985)). Even assuming that due process considerations apply, the challenged letter meets the minimum standards.
 
 
 15
 Minimum due process requires that before an individual may be deprived of property he be given notice and an opportunity for a hearing. See Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314, 70 S.Ct. at 657. The question is not whether a particular individual failed to understand the notice but whether the notice is reasonably calculated to apprise intended recipients, as a whole, of their rights. See Walters, 473 U.S. at 330, 105 S.Ct. at 3194.
 
 
 16
 The CM-1000 letter and guide for submitting additional evidence received by Mr. Jordan stated:
 
 
 17
 To qualify for black lung benefits, you must show that:
 
 
 18
 1. You have pneumoconiosis (black lung disease); and
 
 
 19
 2. The disease was caused at least in part by your coal mine work; and
 
 
 20
 3. The disease has caused total disability. You must meet all three of the above conditions to qualify for black lung benefits.
 
 
 21
 Following this description is a checklist which indicates which of the three conditions that particular claimant failed to demonstrate.[4] The notice refers the claimant to an enclosed guide which discusses the type of evidence that could be used to meet the eligibility criteria. The information provides sufficient detail to pass the notice requirement of due process.
 
 
 22
 The letter also informs the reader that he may either submit additional evidence or may request a hearing. The time limits within which to obtain review are unequivocally stated in a final paragraph which warns: "If you do not take any action within 60 days, your claim will be considered abandoned."
 
 
 23
 The appellant argues that this letter is confusing and misleading because it appears to be a final, unappealable decision.[5] The plain language of the letter advises the reader of specific rights that must be exercised within a certain period and suggests that the claimant obtain a representative to protect these rights.
 
 
 24
 Jordan has also shown that he is familiar with the administrative procedures for seeking black lung benefits. He pursued his 1973 Part B claim through a hearing before an ALJ by timely responding to written notices and also responded to a form letter dated May 22, 1979, from the DOL that informed him that the evidence in his file was insufficient for approval of benefits. Jordan met the thirty day period within which to supplement his record.
 
 
 25
 The denial notice is reasonably calculated to reach its intended audience and the Board properly held that a recipient, such as Jordan, who asserts a special problem of comprehension must take the next step to inquire and make his problem known. See Soberal-Perez v. Heckler, 717 F.2d 36, 43 (2d Cir.1983) (non-English speaking recipients of a notice that is reasonably calculated to apprise applicants of proceedings are charged with a duty of further inquiry). Jordan made no effort to inquire or otherwise make known his difficulty in understanding the notice despite the fact that he had communicated in writing with the Director in the past. We find no reason to reopen his claim.
 
 
 26
 Because we find the denial notice to be adequate, Jordan's failure to respond within either the sixty day period or other one year limitation requires a finding that the claim was abandoned. Jordan's claim filed in 1981 should therefore be considered as a new claim and reviewed under the regulations of Part 718.
 
 PART 718 CLAIM
 
 27
 The ALJ concluded that Jordan had demonstrated the existence of pneumoconiosis through x-ray evidence and that, because he had worked more than ten years in a coal mine, Jordan was entitled to the presumption that the pneumoconsiosis arose out of his coal mine employment. See 20 C.F.R. Sec. 718.302. The ALJ found, however, that Jordan had not established that he was totally disabled because the blood gas and pulmonary function studies were not indicative of total disability under 20 C.F.R. Sec. 718.204(c)(1) or (2). The ALJ also concluded that the physician's reports were insufficient to establish total disability under 20 C.F.R. Sec. 718.204(c)(4) which, in the absence of proof of total disability by the function studies, permits finding total disability from a physician's "reasoned medical judgment" based on medically acceptable clinical and laboratory diagnostic techniques, concluding that a miner's respiratory or pulmonary condition prevents that miner from engaging in employment. To determine whether a submitted report is reasoned, the ALJ must examine the validity of the physician's reasoning in light of studies conducted and the objective indications upon which it is based. See Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir.1983). A medical report is well reasoned if the underlying documentation supports the physician's assessment of the miner's health. See Duke v. Director, OWCP, 6 Black Lung Rep. 1-673, 1-675 (1983). The question of whether the medical report is sufficiently documented and reasoned is one of credibility for the fact finder. Rowe, 710 F.2d at 255.
 
 
 28
 In this case, the ALJ rejected Dr. Sachdev's report because the doctor did not specify in the Medical Assessment section of the form whether the listed physical limitations were Jordan's recitation of his symptoms or the doctor's own medical assessment. The ALJ must identify the basis for a finding that the listed limitations are the patient's rather than the doctor's conclusions. Parsons v. Director, OWCP, 6 Black Lung Rep. 1-272, 1-276 (1983). In this case, the ALJ's finding that Doctor Sachdev failed to specify that the medical assessment was his own was an insufficient basis for rejecting Jordan's claim, a conclusion with which the Director agrees.
 
 
 29
 The ALJ must weigh all of the probative evidence in order to determine whether a miner had established total disability. See, e.g., Cleary v. United States Steel Corp., BRB No. 86-3067 (July 26, 1988); Fields v. Director, OWCP, 10 Black Lung Rep. 1-19 (1987). The ALJ's decision is reversed and remanded for a determination of whether Dr. Sachdev's report constitutes a "reasoned medical judgment ... conclud[ing] that a miner's respiratory or pulmonary condition prevents ... [him] from engaging" in coal mine employment and ultimately whether he is totally disabled by pneumoconiosis. See 20 C.F.R. Sec. 718.204(c)(4).
 
 
 30
 Therefore it is the decision of this court that the petition be granted in part and the case remanded for a determination consistent with the opinion of this court.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Claims for black lung disability benefits are adjudicated under either Part B or C of the Act depending upon when the claim was filed. The filing deadline under Part B was June 30, 1973. See 30 U.S.C. Sec. 923(a). Claims filed after June 30, but before December 31, 1973, were transition claims. See 30 U.S.C. Sec. 925. Claims filed after December 31, 1973, are Part C claims. See 30 U.S.C. Sec. 923(a). The SSA in the former Department of Health, Education, and Welfare (now the Department of Human Services) administered Part B claims. The Department of Labor administers both the transition claims and the Part C claims. See Director, OWCP v. Goudy, 777 F.2d 1122, 1125-26 (6th Cir.1985)
 Part C claims filed on or after April 1, 1980, are governed by regulations which are codified at 20 C.F.R. Part 718 ("Part 718 claims"). Claims filed prior to April 1, 1980, are governed by "interim regulations" codified at 20 C.F.R. Part 727 ("Part 727 claims"). See 20 C.F.R. Secs. 718.1(b) and 718.2.
 
 
 [2]
 The DOL merged the first and second claims because the Black Lung Benefits Reform Act of 1977, P.L. 95-239, 92 Stat. 95, permitted claimants to seek review of previously denied Part B claims. See 30 U.S.C. Sec. 945(a)(1). A claimant could either elect referral directly to the Secretary of Labor, which Jordan chose to do, or could have his claim initially reviewed by the Secretary of Health and Human Services. See 30 U.S.C. Sec. 945(a)(1)(A), (B)
 
 
 [3]
 Under 20 C.F.R. Part 718, a claimant must prove that:
 
 
 [1]
 he has pneumoconiosis (black lung disease) and
 
 
 [2]
 the disease was caused at least in part by coal mine employment; and
 
 
 [3]
 the disease has caused total disability
 The claimant must meet all three conditions to qualify.
 
 
 [4]
 The OWCP failed to check one of the five categories of evidence described in the Guide for Submitting Additional Evidence sent to Jordan. The accompanying letter, however, specified that Jordan's file lacked sufficient evidence of total disability. Jordan does not argue that OWCP's failure to check to total disability box is an independent basis for reopening his claim
 
 
 [5]
 Dr. Levi, the petitioner's linguistic expert, had performed no research involving the claimant population and had no independent knowledge of coal miners or their families